Yazoo & Mississippi Valley Railroad Company v. Epsey Jennings et al.

[43 South., 469.]

1. EMINENT DOMAIN. *Railroad construction. Damages.*

> In estimating damages to result from the construction of a railroad through a farm, it is improper to consider as an element of damage, either:—
>
> (*a*) That laborers on the farm would likely stop work and look at passing trains; or
>
> (*b*) That the mules in use on the farm would likely run away as trains approached; or
>
> (*c*) That deleterious grasses might be scattered over the land; or
>
> (*d*) That live stock getting upon the track would likely be killed by the trains.

2. SAME. *Excessive award. Case.*

> Facts of the case considered and verdict adjudged excessive.

FROM the circuit court of, second district, Tallahatchie County.

HON. SAMUEL C. COOK, Judge.

The Yazoo & Mississippi Valley Railroad Company, the appellant, was the applicant in eminent domain proceedings against Epsey Jennings and another, the appellees. Both parties appealed from the judgment of the special eminent domain court to the circuit court.

On the trial in the circuit court there was evidence for the landowners to the effect that while the actual value of the land to be expropriated was from $100 to $125 an acre, the consequential damages were very considerable on account of the peculiar lay of the land and the manner in which it would be traversed by the railroad track. Appellees claimed damages because of the probability that their livestock would be killed

by railroad trains, because of interference with drainage likely to result from insufficient culverts, the scattering of noxious grasses, and because the passage of the trains would make mules run away and disturb laborers, causing them to stop work and look at passing trains.    The opinion further states the facts.

The jury in the circuit court awarded a verdict for the appellees, jointly, in the sum of $10,000 for the taking of the lands by the railroad company; and from a judgment based thereon the railroad company appealed to the supreme court.

*Mayes & Longstreet,* for appellant.

The verdict of the jury of $10,000 in favor of the two land-owners as compensation for the appellant's taking sixteen and a fraction acres of land is grossly excessive in any view of the case.    We think it will not be denied that the actual value of the land to be taken, as established by the overwhelming preponderance of the evidence, is not less than $75, nor over $125, per acre.    Therefore, at the minimum valuation the actual value of the land would not be more than $1,237.50, and, at the maximum value, $2,062.50.    It therefore conclusively appears that the jury could only have assessed the damage at this latter figure under the evidence for the actual taking, while they assessed an amount in the neighborhood of $8,000 for consequential damages.

One witness for appellees, W. H. Sumner, testifies that there were only seventy-five acres of first-class land concerned, and about one-third of the balance was third-class land.    It was shown indisputably that the value of the whole property of appellees ranges from $45 to $125 per acre.    It was alleged by several other witnesses for appellees, that the damage to the land was one-third the value of the whole property of the appellees; but on cross-examination it was further shown by these same witnesses that many improper elements of damage entered into their estimates.    For instance, as estimates of damage, two witnesses for appellees, R. D. Murphree and

J. B. Sumner, set forth the probabilities that livestock of appellees will be killed by the trains of appellant; that drainage of the rest of appellees' lands will be interfered with; that proper ditches will not be kept open; that labor would be disturbed, grass scattered, and great inconvenience result from appellees having to cross and recross the railroad track. We hardly think it necessary to discuss these elements of damage. No witness should be allowed to estimate that the value of a whole farm of about 300 acres, as is appellees', will be destroyed one-third of its market value because the negroes working in the field may stop in future years to look at passing trains, or that stock will get killed, or that, because of improper attention on the part of the laborers, the appellees' mules may run away in fright at the approach of trains, and get hurt.

The law is that damages for expropriation are estimated on the theory that proper and legal construction will be made, and proper provision be maintained, for drainage. If there should be failure of the railroad company's part as to this, the land owner will have, in every instance, his recourse in the courts. Not only will he have recourse, but the fact that such is the law is conclusive against the control of such considerations in the original condemnation proceedings. *Railroad Company* v. *Davis,* 73 Miss., 678, s.c., 19 South., 487; *Railroad Company* v. *Harlin,* 36 L. R. A. (Neb.), 417. The same rule applies as to the other elements of damage in the estimates of the appellees' witnesses.

While it is right that a landowner should have compensation for property taken, and also that actual damages should be augmented reasonably by further damages allowed because interference with the use or consequent impairment of the value of adjoining lands, we submit that it is beyond the bounds of reason to say that sixteen and a fraction acres out of a tract of three hundred acres will destroy the value of the whole remaining tract to the extent of five or six times the actual damage. The state constitution contemplates that a

landowner shall be compensated reasonably for consequential damages, whether his land be actually taken or not, but the decisions of this court have limited such award to the actual value of the land expropriated and to such consequential damages as are done to the other land as a tract, consequent to the taking.

If verdicts like the one shown in this record shall be allowed to stand, based upon evidence as above shown, the point will soon be reached where the building of new lines will be attended with such enormous expense as practically to prohibit contemplation of any new lines.

*Harris & Powell,* for appellees,

It is not disputed in this case that the land of appellees, through which the railroad company seeks to condemn a right of way, is fresh, alluvial land, and very valuable; that the whole tract of appellees embraces over three hundred acres lying between two bayous, the tract being in the shape of a narrow strip a quarter of a mile wide, east and west, and being a mile and a quarter long, north and south. It is further undisputed that all of the tract is not of uniform value, the land through which the appellant seeks to condemn its way being the most valuable part. And it is undisputed that the slope and drainage of the land is from the east, while the line of the proposed railway is north and south, thus certainly affecting the drainage.

The court does not set aside a verdict of a jury on the mere ground that it is large or small. The jury's verdict in every case is beyond the control of the court in the absence of any error of law, where there is evidence to support the same. And in this case there is ample evidence to support the jury's finding in favor of appellees for $10,000. *Levee Commissioners v. Lee,* 85 Miss., 508, s.c., 37 South., 747.

There were six witnesses for the railroad company in the court below, two of whom estimated the damage to be

$6,000, while a third placed his estimate at $5,000.   The appellees introduced ten witnesses, eight of whom valued the land at $100 per acre, or, in other words, at $30,000 for the whole tract.   Two of appellees' witnesses, J. B. Sumner and J. S. Brougher, valued the land at $125 per acre, making the value of the whole tract of land owned by appellees to be $37,500.   None of the witnesses for appellees placed the damage from the expropriation at less than one-third of the total value of the whole tract.   Some of the witnesses placed the damage at one-half.   Six witnesses placed the damage at $15,-000, and two at $11,692.   The jury seem to have taken the golden mean in the case.

While it is true that, on cross-examination, some of the appellees' witnesses stated certain elements of damage which might not be legitimately considered, yet these elements were excluded by the instructions given to the jury.

It is well settled that whatever tends to lessen the value of remaining land is a proper element of damage, and a matter for the jury's consideration, in eminent domain proceedings. Whether the damage be great or small, the landowner is entitled to compensation in due degree, under the state constitution.   And the doctrine of *de minimis non curat lex* has no application.   Whatever arises in the way of damage from the proper construction of a railroad which diminishes the value of the remaining land, may be taken into consideration.   *St. Louis* v. *Teters,* 68 Ill., 144; *Omaha Southern R. R.* v. *Todd,* 39 Neb., 818; *Freemont R. R. Co.* v. *Bates,* 40 Neb., 381; *Lafley* v. *Chicago, etc., R. R. Co.,* 33 Fed. Rep., 415; *Missouri R. R. Company* v. *Harris,* 10 Kas., 439.

The law jealously guards the rights of a citizen whose property is being taken against his will, and the jury is not to be confined, in awarding compensation, to what the railroad company may actually do for the time being in the premises, but must take into consideration what it would probably do in the operation of its road; and if the rights of the railroad, duly

90 Miss.—7

exercised, would tend to diminish the value of the remaining land, the landowner must get his compensation in the condemnation proceedings, or he cannot get it at all. It is not necessary to show that the railroad is actually going to make excavations on the right of way, or to allow water to stand in these excavations when made, but the question is, has it the right to make these excavations, and, if so, would this tend to diminish the value of the remaining land? The railroad company has the right to do it, and it is likely to do it, and if this would affect the value of the land remaining to the landowner he is entitled to compensation therefor, and he must get it in the eminent domain proceedings, as he will not be permitted to get it in the future elsewhere.

Counsel for the appellant make an earnest appeal to the court to set aside the verdict of the jury, on some idea that the jury may have been misled by the different elements of damage shown in evidence. But the jury could not have been so misled, as the instructions granted to each side were correct enunciations of law, and were presumably followed by the jury.

Argued orally by *J. C. Longstreet,* for appellant, and *J. B. Harris,* for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

There is no merit in any of the contentions of the appellant, except the one which asserts that the verdict is excessive. The case is one which has troubled us very greatly in arriving at a satisfactory conclusion. One witness, W. H. Sumner, testifies that there were only seventy-five acres of first-class land in the tract, and about one-third of the balance, as he puts it, was third-class land; and he was a witness for the defendant. The value of the place ranges from $45 to $125 an acre. Several witnesses for the defendant say that the damage to the land was one-third of the whole value of the place, and some wit-

nesses say that it was one-half the value of the place.    One witness says it was from thirty to forty per cent of the value of the whole place.    But on cross-examination it very clearly appears that many improper elements of damage were used by these witnesses as the basis of their judgment.    Some of these elements of damage were that the laborers would stop to look at the trains, that the mules would run away, that livestock would be killed in the future on the track, and that grasses would be scattered over the farm, etc.    We have done the best we possibly can with the troublesome record, and we think that $6,800 is the utmost limit that can be allowed to stand in this cause, and the judgment can only stand for that amount because of the peculiar lay of this land, and of the singular fact that the tract is only about a quarter of a mile wide, and yet a mile and a quarter in length, and that the railroad company runs through its length one and one-quarter miles, and really takes the heart of the best land on the place; and this amount is reached by allowing $100 per acre for seventeen acres, and three times that sum according to such evidence.

If the appellees will remit down to $6,800, the judgment will stand; otherwise, the judgment will be reversed, and the cause remanded for a new trial.