SCHLICHT *v*. CLARK, ET AL., DRAINAGE COM'RS.

[75 South. 130, Division B.]

1. EMINENT DOMAIN. *Condemnation proceedings. Drains. Remote damages. Evidence.*

In a condemnation proceeding under code chapter on drainage for the construction of a drainage canal it was proper for the court to exclude evidence that it would be necessary to build a fence along either bank of the canal for the purpose of keeping cattle from falling into the ditch. This is too remote to be considered as an element of drainage, where it does not appear that there was any more necessity for a fence with the ditch than there would be if there was no ditch present.

2. EMINENT DOMAIN. *Condemnation proceedings. Drains. Measure of damages.*

   The true rule of estimating damages in condemnation proceedings is the difference in the market value of the property with the improvement and that without it, without considering general benefits or injuries shared by the public in general.

3. SAME.

   Evidence as to the particulars or details in which the property will be damaged or benefited by the improvement is admissible so far as the same tends to show the effect of the improvements on the value of the property, but these elements are not admissible as independent items of damage or benefit.

4. SAME.

   The rule of damages is not different in drainage districts than in other cases of proceeding under eminent domain.

APPEAL from the circuit court of Monroe county.

HON. CLAUDE M. CLAYTON, Judge.

Petition by D. E. Clark and others, drainage commissioners, against Johan Schlicht to condemn land for the construction of a drain. Award in eminent domain court for defendant for six hundred dollars and he appealed to the circuit court, where upon trial *de novo,* judgment was awarded for defendant for eight hundred and thirty-three dollars and sixty-four cents and defendant appeals.

The facts are fully stated in the opinion of the court.

*J. L. Lyon* and *Chalmers Alexander,* for appellant.

The first assignment is that the court below erred in refusing to allow testimony in regard to fences, cost of fence, and inasmuch as the law in regard to damages because of drainage canals is in its infancy in Mississippi, and because there will be many similar cases, we respectfully urge attention to this question.

Can the owner of land, ex-propriated under eminent domain, bring in for consideration as a part of his damages the cost of fences and fencing along the land to be ex-propriated from him? The court below held to the

negative. We insist upon the affirmative. The question was squarely put in the lower court. Mr. Schlicht was not allowed to testify as to fence or fencing or necessity therefor. And then, Mr. Paine, of counsel for Mr. Schlicht, page 72, put the proposition before the court, with result in the negative. And, page 140, the trial court refused an instruction which recites that the jury should have considered the matter of fences and should also have considered the matter of bridges, and here was fatal error. There is really something amusing in allowing the sovereign power to dig a thirty-foot canal for two miles through a fertile pasture land, and then refuse even a consideration (mental consideration) of the cost of a bridge, even one bridge, across this canal placed through the property over the opposition of the owner. And as to the fences we propose to show that this was an item for consideration by the jury.

Under the chapter on Eminent Domain, Volume 10 of Second Edition of Am. & Eng. Encyclopedia of Law, says in discussing the measure and elements of compensation: "Cost of Fencing. In some states railroads are required to fence their rights of way. But where the character of the land thru which the road runs is such as to necessitate the fencing of the right of way in order that the adjoining land may be used in a safe and proper manner, if the company is not required to construct the fence, the cost of new fencing may be reckoned in the estimate of the landowner's compensation, provided the necessity for fencing affects the value of the land. Cases in California, Arkansas, Delaware, Illinois, Indiana, Kansas, Kentucky, Massachusetts, Minnesota, Mississippi (61 Miss. 631), New Hampshire, New Jersey, New York, North Carolina, So. Carolina, Pennsylvania, Texas, Washington, Wisconsin, along and imposing array, are cited in the footnotes of the said text book page 1171. 10 Ency. Law (2d Ed.), 1171; *Silver Creek Case,* 64 Miss. 682; See 10 Ency.

Law (2 Ed.), 1173; 10 Ency. Law (2 Ed.), 1080; 10 Cyc., 709; *Dalrymple* v. *Whitingham,* 26 Vermont, *et tu Vermonte.*

Now, please bear in mind that Mr. Schlicht, insisted that fencing was necessary; that no one denied that it was necessary; that when he sought to show in evidence that it was necessary, the court denied him this right.

The matter of bridges should be a considerable item, especially when everybody said that at least one bridge was necessary; and when Mr. Schlicht said three were needed. The refused instruction sought to place before the jury the question of fences and bridges. The jury had no chance to pass upon bridges and fences.

Conceding that the statutory instruction in its general terms concluded the idea of bridges and fences, is it not yet and nevertheless true that that very identical jury had seen Mr. Schlicht's able counsel attempting to show in evidence facts about the fences and then seen the judge refuse this? Did not they thus get the idea that fences must not be considered?

The plain fact is that if the jury could have figured on first, value of the land taken, second, cost of bridges, and third, cost of four miles of fences, the verdict of the jury would have been much higher. As to the second ground of assignment, we thus say that as a corollary to the foregoing, the jury's verdict was inadequate. As to the third ground of assignment, we say that the court below erred in allowing in evidence the opinions of witnesses as to how much Mr. Schlicht's land would be benefitted.

*C. P. Long,* for appellee.

The general charge which was given was all of the charges to which appellant was entitled and on this charge the jury was entitled and did consider all of the damages which had been allowed to be proved by the ap-

pellant, so that in truth and in fact, the only question before this court is whether the court erred in refusing to allow the appellant to prove what it would cost him to keep and maintain a fence up each side of the channel, and I now proceed to argue that question.

Appellant's counsel argue that the same is not a question of law, but one of fact, however, the supreme court does not seem to agree with this contention as will be found by an examination of the case of *Yazoo & Miss. Valley R. R. Co.* v. *Jennings et al.*, 90 Miss. 93.

In deciding the above case the supreme court say that it is improper to consider as an element of damages either (a) That laborers on the farm would likely stop work and listen to passing trains; or (b) That the mules in use on the farm would likely run away as trains approached; or, (c) That deleterious grasses might be scattered over the land; or, (d) That live stock getting upon the track would likely be killed by the trains.

All of the above foundations or basis were declared to be too vague, uncertain and speculative upon which to found any claim of damage; and I respectfully submit that there was more sense in either of the above claims and that either of the above things was more apt to happen than the things contended for by the appellant as a reason why it would be necessary to fence this canal. The court will bear in mind that the appellant set up or gave his reason why and upon which he claimed to be justified in making a claim for this fencing, and this reason given by him, of course binds him in this court, and that was that it would have to be done in order to keep his mules, cows, etc., from walking over into this canal and getting drowned, a bigger fool proposition I dare say was never offered in court as a basis to try to extort money out of someone else.

A companion case to the above will be found in 136 S. W. 905, being the case of the *Louisville & Nashville R. R. Co.* v. *Hall et al.*, in which it was sought by the

defendants to increase their supposed damages· by claiming that the live stock on the farm would be frightened, and it was also claimed or set up that the opening of the railroad would open up a highway for tramps to travel and that the barn on the place being in sight of the railroad, tramps would make a sleeping apartment of the barn and thus endanger the barn to fire, etc.

In the case of *Same Railroad Company* v. *The City of Louisville*, 111 S. W. ——, it was held that the railroad company was not entitled to damages because the opening of a street might cause water in rainy seasons to be precipitated to its damage in unusual quantity on its track and right of way, etc., and likewise, it has been held in several cases where a highway or street was opened across the right of way of a railroad that the railroad could not make any claim for damages on the ground that it, the railroad, would be more apt to kill or injure someone at the crossing and thus increase its liability to loss on this account.

The court will bear in mind that while appellant in their brief complain that the jury was not allowed to consider the question of necessary bridges across this canal, such was not the case, as all the testimony offered in reference to bridges by both sides was allowed to go to the jury as well as the other elements of damage claimed by appellant; the only thing which was kept from the jury being the claim of appellant for fencing the canal.

Counsel for appellant have cited several authorities holding that the cost of the construction of a fence will be allowed in Eminent Domain proceedings, but·in all of these cases it is held that there must be a necessity for the fencing and in all of them it will be found that they are cases in which the question of fencing the right of way of a railroad so as to keep live stock from going upon the same and being run over and killed by engines and trains, or cases in which land for public roads and highways were laid out through land and fences were necessary either to keep the public from driving

out across the adjacent land of the owner, or in order to enable the owner to cultivate and make crops on the land.

Now, it is a well known fact of which this court will take judicial notice, that there is danger under some circumstances and surroundings, of live stock wandering onto the track of a railroad and being run over and killed; and it is also a well known fact that where the road gets bad if there are no fences to prevent, people will leave the main highway and go out on the abutting land in their efforts to find a more easy way to travel; and it is also a well known fact that up to a few years ago in Mississippi and in some other states and communities where a man's farm or land was cut into by a railroad or turnpike that fences either had to be built up and down the railroad and turnpike or fences across the turnpike with gates and cattle-guards across the railroad had to be constructed, but now all of this is practically obsolete in Mississippi because people are required to keep up and take care of their cattle and horses and other stock in confinement instead of letting them run at large upon the public. Counsel for appellant say that it was a question of fact whether Mr. Schlicht ought to have had pay for fencing this right of way. Now, I submit that when Mr. Schlicht gave his reasons why he wanted to fence it that the question whether his reasons were sufficient in law to justify the decision or not, was not a question of fact but a question of law and for the court to decide.

As oral argument is to be made in this case I will desist from further briefing the same.

Ethridge, J., delivered the opinion of the court.

D. E. Clark and others, drainage commissioners, filed a petition to condemn a strip of land through the plantation of the appellant under the Code chapter on "Drainage," for the construction of a drainage canal.

The canal would extend for about two miles through the said plantation and varied in width from twenty to twenty-four feet at the surface and to a width of ten feet at the base of the canal, with a depth approximately of ten feet. In the eminent domain court the appellant was awarded six hundred dollars for the strip taken and his damages, and appealed to the circuit court, where the matter was tried anew, and a judgment rendered for eight hundred and thirty-three dollars and sixty-four cents, from which judgment appellant appeals here.

The evidence of the value of the land taken varied from the sum of five dollars per acre to fifty dollars per acre, and there were approximately fifteen acres taken. There was testimony showing that the plantation would not be damaged at all outside of the strip taken, and there was testimony that it would be damaged varying in amounts to as high as three dollars per acre damage to the plantation, in addition to the strip so taken. There was evidence that the canal would have to be bridged and considerable evidence on the cost necessary for constructing bridges, the estimates for bridges varying from ninety dollars for the three bridges to one thousand eight hundred dollars for the three bridges. Schlicht offered proof that he would have to fence the canal on either side for two miles to keep his cattle from falling into the ditch, which proof was on objection excluded by the court below and is complained of here. The court gave the statutory instruction as to the dawage to be awarded, and also gave the defendant an instruction to the effect that in finding the actual cash value of the land taken that the jury would not be guided by the price for which the identical strip sixty feet wide can be sold on the open market without reference to the adjoining parts of the tract, but that its cash value in open market as an integral part of the whole tract should be taken. The defendant requested

an instruction in the following language, which was re-fused:

"The court instructs the jury for the defendant if they believe from the evidence in the case that the con-struction of the canal through the land of the defendant would require said defendant to build fences on each or either side of said canal and construct a bridge or bridges over the same in order to use the land through which the canal is laid out, as he has done prior to the digging of the same, then they will, in estimating the damage due the defendant, take into consideration the value, or cost, of constructing the necessary fences along said canal, and the bridge or bridges over said canal."

This refused instruction and the excluded evidence as to the necessity of a fence along the ditch is presented for consideration as error in this' case. It was proper for the court to exclude the evidence that it would be necessary to build a fence along either bank of the canal for the purpose of keeping cattle from falling into the ditch. This is too remote to be considered as an ele-ment of damage, and it does not appear that there could be any more necessity for a fence with the ditch than there would be if there were no ditch present. In refer-ence to the refused instruction, we think it was properly refused. It embodies the cost of building this fence, and also a consideration of the cost of the construction of the bridges over this canal, and as drafted the in-struction is erroneous and misleading.

We think the true rule of estimating damages in cases of this kind is laid down in *City* v. *Higgins,* 81 Miss. 376, 33 So. 1, and is the difference in the market value of the property with the improvement and that without it, without considering general benefits or injuries shared by the public in general. See, also, note to *O'Brien* v. *Philadelphia,* 30 Am. St. Rep. 840; *Warren County* v. *Rand,* 88 Miss. 395, 40 So. 481; Miss. Digest (Bobbs-Merrill) title "Eminent Domain," sections 122 to 144, inclusive. See, also, 5 Enc. Ev. p. 204, title,

"Eminent Domain," where the rule is stated as follows:

"Specific Elements of Compensation.—Evidence as to the particulars or details in which the property will be damaged or benefited by the improvement is admissible so far as the same tends to show the effect of the improvement on the value of the property, but these elements are not admissible as independent items of damage or benefit."

The rule is not different in drainage districts than from other cases of proceedings under eminent domain. We find no reversible error, and the case is affirmed.

*Affirmed.*