CITY OF JACKSON *v.* WRIGHT.*

(Division B.   Dec. 17, 1928.)

[119 So. 315.   No. 27441.]

830

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 3014, p. 1032, n. 36; Eminent Domain, 20CJ, section 156, p. 702, n. 4; section 209, p. 752, n. 85; section 228, p. 769, n. 76; As to whether cutting off access to a highway is a taking for which compensation must be made, see annotation in 15 L. R. A. (N. S.) 49; 45 A. L. R. 537; 10 R. C. L. 72; 2 R. C. L. Supp. 972; 7 R. C. L. Supp. 319.

*Morse & Bryan,* for appellant.

*Robertson & Campbell,* for appellee.

Argued orally by *Harry M. Bryan,* for appellant, and *Stokes V. Robertson,* for appellee.

ETHRIDGE, P. J. Ray Wright, appellee here, plaintiff in the court below, sued the city for damage to property abutting on Cohea street, in the city of Jackson, caused by closing Cohea street between the eastern and western lines of the right of way of the Chicago, St. Louis & New Orleans Railroad Company; thus cutting off plaintiff's means of access from his property to East Cohea street, and to Mill street, which intersects Cohea just east of the right of way of the railroad. The property has a frontage on Cohea street of one hundred twenty-five feet,

and runs thence south along the west line of lot twenty-one of the Compromise survey sixty feet, thence east to the east line of lot 22, thence north along the east line of said lot 22, to the point of beginning.

It appears from the record that the city of Jackson, on or about the 19th day of November, 1923, passed an order vacating the street at said point, but undertaking to reserve in the city the fee in the street, should it thereafter decide to reopen the street.

It is further alleged that the grade of said street was laid above the surrounding property, so as to conform to the raise in the roadbed and tracks of the said railroad, made in pursuance of an order of the city requiring the railroad to elevate its tracks through certain parts of the city of Jackson, and to provide underpasses at particular streets, and crossing at other main streets, and vacating other streets across the railroad right of way.

It was alleged that the property, prior to said act by the city, was valued at four thousand dollars, which value was decreased thereby to the extent of two thousand dollars.

It was contended by the city that there was a street or avenue, called Railroad avenue, lying between the right of way of the railroad company and the plaintiff's property, and that by reason thereof the plaintiff was not an abutting owner of property on the street where it was closed, but that the intervening streets, and other streets, enabled the plaintiff to pass to Fortification street on the north, and to Monument street on the south, through which streets he could reach Mill street and other streets in the city. It appears that Mill street is an improved street from Capitol street north through the city, and especially to Fortification street; and it is contended plaintiff had reasonable access to said street, and to other streets in the city, without undue inconvenience.

It appears from the map of the Compromise survey, introduced in evidence, that there was a strip marked thereon called ''Railroad avenue,'' apparently about twenty-five feet wide, running both north and south of Cohea street; but the plaintiff testified that he knew nothing of any such street; that while it appeared on the map, it did not exist in reality; that there had been some wagonway along the east side of his property; that it had been filled in and obstructed, and was not open as a passageway. Some of the witnesses testified that there was a kind of a passageway leading north and south, but it does not appear to have been an improved and traveled street, constituting a way of ingress and egress to his property. The proof showed that it was necessary, in order to reach the property from Mill street, and from the business center of the city, to go up Mill street to Monument, along Monument to Bailey, then north to Cohea street, thence east to the property involved; and that this was the route used in getting to and from the property after the closing of Cohea street. It also appears from the map introduced in evidence that there was a street called Hoskins street, lying between the property involved, and Bailey avenue, and running north and south from Cohea street to Fortification street, and to Monument street; but the witnesses who examined the property seem not to have observed this street, and it nowhere appears in the testimony that it is an improved thoroughfare, in general use, and fit for travel.

There was a verdict for plaintiff for six hundred fifty dollars, and judgment was entered, from which judgment this appeal is prosecuted.

It was first contended that there is no liability to the plaintiff because he was not an abutting property owner at the point where the street was closed, and while the closing of the street across the railroad right of way made it less convenient to reach his place, it was damage without injury.

We are of the opinion that this position is not well taken. It is doubtful if the Railroad avenue marked on the map had ever been kept in condition as a street by the city, and it certainly appears without dispute, we think, that it was not an open street, available for travel and passage between plaintiff's property and the place of the closing of Cohea street.

It is also contended that there were two erroneous instructions given to the jury: No. 2, given for plaintiff, advised the jury that in arriving at the amount of damages to plaintiff's property, and in determining what sum was sufficient to compensate him therefor, it was their duty to take into consideration all of the surrounding circumstances and conditions; that is, the difficulty of access to plaintiff's property with the street closed, the purpose for which the land was purchased or used, and its value for the particular purpose for which plaintiff intended to use it, and that the measure of such damages is the difference in the market value of said property before and after the closing of said street, and should include all damages, both direct and consequential.

Instruction No. 4 reads as follows: "The court instructs the jury for the plaintiff, that if you believe from the evidence that plaintiff bought this property with a view to and for the purpose of using the same as business property, and has not abandoned such purpose, then the measure of damages to said property is the difference in the market value of the same, as business property, immediately before the closing and immediately after the closing of Cohea street."

There was testimony tending to show that the northeast part of the property involved was a suitable location for a grocery store, and that this fact was remarked upon by the real estate agent making the sale to Mr. Wright, as the owner; but there was no testimony to show what the value would be as business property, or what special damage would result from that considera-

tion—the testimony being in regard to the value of the lot immediately before and immediately after the closing of the street. It was shown by testimony that the present use of the property is for rental to negro tenants, but there was testimony to the effect that the lot was suitable for a grocery store site. The testimony was as to the general damage sustained by reason of the decrease in value, and not with reference to a particular use, except that there was some testimony to the effect that the witness did not think the closing of the street would affect the value of the property as negro tenant property. In testimony of the various witnesses, the extent of damages was estimated from two thousand dollars down to no damages at all; but there was no evidence boosting the price, or fixing the amount of damages that would have been suffered, had the property actually been used as a grocery store.

We think the test in such cases is for the jury to consider any use for which the property is suitable and adapted, and it is not to be measured by the intention existing in the mind of the owner as to what use it will be put; nor is it limited by the use to which it has actually been put. All of the uses to which it may logically be put, and which it is calculated by its nature and situation to serve, may be considered. Therefore, the instructions are not technically correct; but considering the entire record, and the fact that the jury viewed the property, and the moderate verdict rendered, which is supported by the proof that the jury was not misled by the instructions, and did not undertake to, and in fact did not, render a verdict based upon any secret intention of the owner.

The fourth instruction for the defendant is similar to the second for the plaintiff, and invokes largely the same principal. Therein the jury is told that if it believed from the preponderance of the evidence that plaintiff was entitled to recover damages, they should take into

consideration the kind and character of the property, its location, and the use to which he put it, or intended to put it, and the revenue derived therefrom before and after the closing of Cohea street, in determining the value of said property before and after said street was closed.

The jury was also instructed, in the fifth instruction for the defendant, that in arriving at its verdict the jury cannot take into consideration any theoretical or speculative value of plaintiff's property before and after the closing of Cohea street; but that the damage, if any, for which recovery could be had, is limited solely to such special damage as the plaintiff might have sustained by virtue of closing said street.

Taking into consideration the entire record, and all of the instructions for both parties, and the amount and reasonableness of the verdict rendered, we do not think the error mentioned calls for a reversal of the case, and the judgment of the court below will be affirmed.

*Affirmed.*