JOE DUCK KWONG et al. v. BOARD OF MISSISSIPPI LEVEE COMMISSIONERS.

(Division B. Dec. 5, 1932. Suggestion of Error Overruled Jan. 2, 1933.)

[144 So. 693. No. 30289.]

Percy, Strauss & Kellner, of Greenville, for appellant.

252

H. P. Farish, of Greenville, for appellee.

Ethridge, P. J., delivered the opinion of the court.

The appellants, Joe Duck Kwong, Chow Wai, and Joe Guay, doing business as Joe Gow Nue & Co., instituted proceedings before the levee damage commissioners of Washington County, Mississippi, for the assessment of damages alleged to have resulted from the enlargement of the Mississippi river levee in Greenville, Mississippi, adjacent to certain business property owned by them. The damage commissioners refused to award the appellants any damages, and they appealed to the chancery court, where the case was tried before the chancellor, who awarded them a decree for one thousand dollars, from which decree the appellants have appealed on the

ground that the damages so allowed are totally inadequate.

It appears from the testimony of the appellants that the stores involved and the lot on which situated were purchased in February, 1929, at and for the sum of fourteen thousand dollars cash, and that they had afterwards expended two thousand five hundred dollars in repairing the buildings. As a part of their purchase, the appellants acquired a perpetual easement to use an eighteen-foot alley which was the only entrance to the appellants' garage in the rear of the buildings. The front building faced thirty-one and a half feet on Washington avenue, and ran back one hundred twenty-nine and one-half feet on Walnut street. The back building faced twenty-two feet on Walnut street, and ran back a depth of seventy-five feet. At the time the appellant purchased the property, Walnut street was sixty-six feet wide, and was maintained by the city of Greenville. It extended five blocks north from its intersection with Washington avenue adjacent to appellants' buildings, in which five blocks there were fifty-five residences occupied by as many families.

On March 2, 1931, the appellee condemned all of Walnut street from the north line of the alley in the rear of the appellants' property and the fifty-five residences north of this point. They also condemned a part of Walnut street directly in front of the alley and appellant's back store building, and adjacent to appellants' front store building. Thereafter the levee was enlarged whereby Walnut street was entirely closed from the north line of the alley entering the rear of appellants' property, and partially closed in a diagonal line across Walnut street in front of and adjacent to appellants' property. That part of Walnut street not occupied by the enlarged levee was scooped out and graveled by the appellee in order to drain the water from the levee into a ditch constructed by the appellee.

The appellants and a number of other witnesses testified that, on account of the closing of Walnut street, and the removal of the fifty-five families, and the enlargement of the levee, as stated, their property was damaged, at least, fifty per cent. One witness placed this damage as low as thirty-three and a third per cent. It was shown that prior to the closing of the street and the building of the enlarged levee, a large number of wagons and automobiles habitually parked in the streets adjacent to appellants' property, and that they had built up a considerable business with this traveling public, as well as with the fifty-five families who had been moved out of the territory adjacent to the stores of appellants.

There was some evidence that the appellants' property had depreciated from its former value by reason of the depression, and that both the depression and the condemnation proceedings by the levee board had contributed to the depreciation of the value of appellants' property.

Many of the witnesses testifying for the appellants were thoroughly familiar with the situation, and the fact that, prior to the building of the enlarged levee, a large number of people had gone in and out of the appellants' stores, doing some business with them, and that, since said levee has been enlarged, this had largely decreased. The testimony for the appellants also showed that a considerable part of the trade that came in over the closed street had done business with the appellants, and that, since the enlargement of the levee, this had ceased, and that trade, as well as that of the fifty-five families, had been lost.

The damage commissioners who disallowed the appellants damages, and some engineers, testified that in their judgment there were no damages done to the property; but none of them had any knowledge of the volume of business done before the enlarging of the levee, and they were not familiar with the value of the stores for the conduct of general merchandising business. It seems to

have been their idea that, because there was no physical invasion of the property, and because the appellants could use the back store as a warehouse, and could get in and out at the rear of the store, and to the warehouse and garage, there was no damage done to the property.

It was undisputed that vehicles could not turn around in the space, or pass each other, and that there was only a roadway of some eight feet left after enlarging the levee.

It is manifest that this testimony had but little probative value, and that the witnesses were not basing their testimony upon legal rules governing the determination of damages to property, as distinguished from property physically taken.

Under section 17 of our Constitution, property damaged for public use must be compensated for as well as property physically invaded.

There is a small conflict in the evidence, but the evidence on behalf of the damage commissioners was not based upon knowledge, and ignored entirely the elements of damage.

We have carefully considered all the testimony in the case, and have reached the conclusion that the award by the chancellor is totally inadequate. We are satisfied from the evidence that the appellants were damaged to the extent of two thousand five hundred dollars, and that the chancellor should have allowed this amount.

As all of the facts are before us, and as we are authorized to enter such judgment as the chancellor should have entered, where it is manifest from the record, as it is here, judgment will be entered here in favor of the appellant for two thousand, five hundred dollars.

Reversed, and judgment here for the appellants.