STATE HIGHWAY COMMISSION *v.* BROWN *et al.*

(Division A. May 25, 1936.)

[168 So. 277. No. 32245.]

24

Blair & Anderson, of Tupelo, for appellant.

**E. R. Holmes, Jr.,** Assistant Attorney-General, for appellant.

Mitchell & Clayton, of Tupelo, for appellees.

Argued orally by **E. R. Holmes, Jr.**, for appellant, and by **Guy Mitchell, Sr.**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

The appellant, the state highway commission, instituted eminent domain proceedings under chapter 26,

Code of 1930, in the county court of Lee county, seeking to condemn certain land owned by Mrs. Jane D. Brown for the purpose of constructing United States highway No. 45 across said land. There was a verdict in that court for eight thousand dollars in favor of appellees. The case was appealed to the circuit court, and, upon a trial de novo, there was a verdict and judgment for nine thousand dollars against the state highway commission, from which latter judgment it prosecutes an appeal here.

The appellee Mrs. Jane D. Brown owned a ten and one-half acre tract of land within the city of Tupelo. This land had been inherited by her husband in 1899, and owned by him until about two years before this proceeding, when he conveyed it to his wife.

Appellant alleged that it was necessary, in relocating the highway, to condemn a strip one hundred feet east and west across this land in a north and south direction. After taking the strip of land one hundred feet wide, running entirely across this property, there was left on the east side, facing a spur track, a strip of land one hundred and seven feet east and west, on the north side thereof, seven hundred and nine feet long north and south, and one hundred and ninety-six feet deep east and west on the south end. This spur track was practically on the east line of the ten and one-half acre tract and extended along such line about two hundred and seventy feet; it also ran across other property and connected with the Frisco Railroad. The spur track had not been in use for about fifteen years.

It was undisputed that the land in question is about six feet lower than the adjoining land south thereof. It was further uncontradicted that the land had always been used principally for farming purposes. About 1919 a brick kiln or factory was erected on the land, for which the spur track was constructed, but it had never manufactured a brick. A part of the foundation of this factory remained on the land, partially within the one hun-

dred feet sought to be condemned, and this was destroyed with dynamite by the state highway commission.

According to the witnesses offered by the appellant, the highest value placed upon this land and the compensatory damages for the taking thereof would not exceed from one hundred dollars to four hundred dollars per acre, or the total damage for the taking was estimated at not more than six hundred forty dollars. It was shown that the foundation of the old brick factory could be replaced for five hundred ninety-one dollars and fifteen cents. There was no effort to show its value before the commission destroyed it.

Some of the witnesses for the appellant thought the tract of land was unsuitable for industrial purposes, for the reason that it was six feet lower than adjoining property and was subject to overflow, having overflowed at times. The highest value placed upon the land, six hundred forty dollars, takes into consideration the adaptability of the tract as an industrial site.

A number of the witnesses called in appellee's behalf did not undertake to estimate the fair market value of the land before it was taken, but testified that the taking thereof for a highway to be constructed at an elevation of six feet would "simply ruin" the value of the land. A number of them also testified that it was suitable for industrial purposes, but after the highway was built it would not be. One disinterested witness was asked this question: "What do you consider that would be worth per foot along the side track?" He finally answered: "I would figure from twelve dollars and fifty cents to twenty dollars." As the spur track was two hundred seventy feet long, at twenty dollars a foot, his estimate would not exceed five thousand four hundred dollars. He made no effort to value the remainder of the land, nor did he hazard an opinion as to what the value would be if a spur track were built along the entire seven hundred nine-foot width of the property. As

to the east strip of the property, he said that he did not think it would be valuable for industrial purposes after the taking of the one hundred feet by the highway commission because it would not be deep enough.

Col. Levi Brown, the former owner of the land, testified that he bought this spur track from the receiver of the brick company; that the land was worth "Twenty Dollars a front foot for the 709 feet of switch frontage." There had never been a switch track extending along four hundred thirty-nine feet of this east frontage. There was no effort to show the present value of the switch track as related to the land not taken. The witness made no distinction between the land abutting the track and that not touching it; in other words, that which actually did not abut any spur track was worth as much per front foot as that which did. His total valuation was fourteen thousand one hundred eighty dollars.

The evidence shows that there were industrial plants not far from this ten and one-half acre tract. The area owned and covered by them is not shown, nor their exact distance from the land in controversy. The evidence further shows that there were two or three other industrial plants in other parts of the city of Tupelo.

A motion for a new trial was filed upon the ground that the verdict was excessive and evinced passion and prejudice on the part of the jury. The circuit judge and the jury visited and viewed the premises. In overruling this motion, the judge said: "The Court went out with the jury, as a matter of course, to view the premises, and, frankly, if the Court had been on the jury, he wouldn't have allowed the damages the jury allowed, because the Court couldn't see that much value in it, but as the Court understands the matter, the jury is the sole judge of the damages, and having viewed the premises and having heard the testimony of the witnesses as to the value of this property for industrial purposes, they have assessed as total damage for taking

and consequential damages done the balance of the land at nine thousand dollars. The Court says that is much more than he would have allowed had he been a juror, but as the Court understands the law the jury is the sole judge of damages in a case of this kind. The Court is not prepared to say from the evidence in the case and the fact the jury viewed the premises that the verdict is so grossly excessive as to evince prejudice and malice on their part."

All the evidence in this case is opinion evidence. There was no evidence of any activity in industrial sites in the particular locality of this property. An industrial plant had been constructed on this land many years before, but it had never been used. The strongest possible view of Col. Brown's testimony is that he held the land in the hope that some day it might be used for industrial purposes. There is no substantial evidence which authorized the jury to determine that the property taken, augmented by the compensatory damages accruing to the appellee because thereof, could be fairly valued at nine thousand dollars. There is such a wide disparity between six hundred forty dollars on the one side and nine thousand dollars on the other that a normal man would stop and investigate; it is, in fact, too wide a chasm to be bridged fairly and impartially. The witnesses were about equal in number, intelligence, and experience; only three of them undertook to place the highest market value of twenty dollars a front foot for the entire depth of the land, and they did not indicate that there was any prospect immediate or remote of any other industrial site being sought in that particular locality.

We are reminded by appellee of the fact that the jury viewed this land in so far as adaptability for industrial sites is concerned. These jurors might have gone the length and breadth of any railroad in this state and found lands that were perfectly beautiful and perfectly adapted to manufacturing enterprises, but that fact

alone would not authorize the assumption that such lands would be sought and used for such purposes within any reasonable time.

In the case of Yazoo & M. V. R. Co. v. Adams, 31 So. 427, this court reduced the verdict in a condemnation proceeding from one thousand nine hundred eighty-seven dollars and twenty-five cents to nine hundred eighty-seven dollars and twenty-five cents. The rule for the assessment of damages in condemnation proceedings, under our statutes here involved, is the difference between the fair market value of the land before the taking thereof and the fair market value of what remains after the land has been taken, and under this rule, of course, all consequential damages to the owner which flow from the taking are considered. See Schlicht v. Clark, 114 Miss. 354, 75 So. 130; Mississippi State Highway Department v. Blackburn, 172 Miss. 554, 160 So. 73. In estimating compensatory damages, consideration must be given the fair market value of the property and all of its available uses and purposes. State Highway Commission v. Buchanan (Miss.), 165 So. 795; City of Jackson v. Wright, 151 Miss. 829, 119 So. 315; Louisville, N. O. & T. R. Co. v. Ryan, 64 Miss. 399, 8 So. 173, 174.

The testimony of Col. Brown is not a sufficient basis upon which the jury could find a present, determinate, fair market value of the land, and damages thereto from the standpoint of an industrial site, for the reason that it furnished no guide whatever to the jury for determining the amount of its award in this case. After showing that the property is adapted to a particular use and available therefor, it must appear that there is some probability that the land will be used for such purpose within a reasonable time. The fact that a manufacturing plant might be established upon the land within twenty years would add but little intrinsic present, determinate, market value to the land, whereas the probability that such plant might be established thereon

within a year or two would add materially to the present market value thereof, and would be a basis upon which a verdict could be rendered. 20 C. J. p. 773, and the many authorities cited in the notes. However, appellee says that in the case of Louisville, N. O. T. R. Co. v. Ryan, supra, this court held otherwise. In that case the court, in passing on the amount of the verdict, declared that the evidence for the plaintiff as well as that for the defendant showed that the injury done was fully equal to the damage awarded, and that no witness examined put the damage at less than the sum awarded. With this in view the court further said: ''The criticism made by counsel for appellant that the court permitted the plaintiffs to prove the speculative value of the property is not a just one. The witnesses all testify that the property *has a certain, determinate value.* Now, what causes that value is evidently the uses to which it may be put by the owner. It is a long, narrow strip of land fronting on a navigable stream, where the commerce of a city enters and is discharged. Clearly it is of insignificant value for agricultural purposes, *and there is neither a wharf, a factory, or a saw-mill on it, and there may never be.* But, if its adaptability to these purposes or any one of them give it *a present value,* the owner is entitled to that value, though in fact no one now proposes to use it for any of these purposes. *The suggestion of the appellant that the land might never be devoted to any of the uses to which its situation and character adapt it is far more improbable than that it will be done.''* (Italics ours.)

The appellee seems to lay stress on the declaration by the court, in answer to the suggestion of the appellant that the land might never be devoted to any of the uses to which its situation and character adapt it, that such is far more improbable than that it might be done. The statements of the court in that case were applicable to the facts there being considered—a case where there appeared to be no doubt as to the sufficiency of the evi-

dence as a basis of the value of the land, since the court did not set out the evidence, but did say that all the witnesses testified that the property had a certain, determinate value.

In this case the witnesses might testify that there is a reasonable probability that the land would be sought for the uses to which it was adapted; that probability might never eventuate, and yet the jury, with that evidence of this probability before it, could and would have a basis upon which to fix a present, determinate value. To say that a present, determinate value might be estimated by witnesses or a jury upon the mere fact of adaptability, without reference to the length of time which might intervene before that adaptability would come into actual use, is to go so far afield in the speculative realm as to warrant us in saying that the jury here had no substantial basis upon which to render this verdict, notwithstanding their view of the land. While we must attach the importance it deserves to the view of the land by the jury, at the same time the evidence in the case, apart from the view of the land by the jury, must sustain the verdict as a reasonable substantial probability. In our judgment such probability does not appear in the evidence in this case. Damages recovered in any case must be shown with reasonable certainty both as to their nature and in respect to the cause from which they proceed. Kress & Co. v. Sharp, 156 Miss. 693, 126 So. 650, 68 A. L. R. 167.

While the evidence, so far as it went, was competent to show the adaptability of the land to the particular use here under consideration, it did not go far enough to furnish the jury with a reasonable basis upon which to return their verdict, for the reason that this record does not disclose a probability that the property would be put to the use to which it was adapted within a reasonable time. The adaptability of the property for a particular purpose is immaterial, unless the present market value is enhanced thereby. 20 C. J., p. 773, and notes.

We conclude, therefore, that the verdict is excessive because the jury were not furnished a standard upon which they could determine the present fair market value of this land. Therefore we are of the opinion that the case should be submitted to another jury. In the state of this record, the verdict of the jury is speculative and not justified by the evidence.

There are other assignments of error which we do not consider, for the reason that they will probably not appear upon another trial.

Reversed and remanded.