MISSISSIPPI STATE HIGHWAY COMMISSION *v.* WILLIAMSON *et al.*

(Division B. March 21, 1938.)

[179 So. 736. No. 33055.]

Ray & Spivey, of Canton, for appellant.

402

Watkins & Eager, of Jackson, and H. T. Huber, of Canton, for appellees.

**Anderson, J.,** delivered the opinion of the court.

The state highway commission brought this proceeding in a court of eminent domain in Madison county against the Williamsons, the appellees, to condemn a roadway and a parkway through their land in that county to constitute a part of what is known as the Natchez trace highway and parkway project. Damages were awarded the Williamsons in the sum of $7,794, for which judgment was entered, from which judgment the highway commission appealed to the circuit court, where there was a trial and a verdict and judgment in the sum of $9,000 in favor of the Williamsons, from which judgment the highway commission prosecutes this appeal.

The principal question in the case is whether the verdict was excessive, that being one of the grounds of the motion for a new trial, which was overruled. This court has held time and again (so often it is useless to refer to the cases) that neither the trial court nor this court can substitute its judgment for that of the jury in awarding damages; that the verdict of the jury must stand unless it is plain that the verdict is so excessive as to have been brought about by passion or prejudice—putting it differently, so excessive as to be shocking to the enlightened conscience.

The Williamsons own a plantation in Madison county consisting of 845 acres in almost a square body. The highway commission condemned for the purpose of the Natchez trace project a strip 800 feet wide and over a mile long, consisting of 101 acres, through this land; its course is somewhat northeasterly and southwesterly, the witnesses, however, refer to it as east and west. It will be referred to in this opinion in the same manner. Three hundred and sixty-seven acres were left north of the right of way and 377 acres south. The much larger part of the land in cultivation consisted of the 101 acres condemned and the land lying north thereof, however, there

was some land in cultivation on the south, but the larger part of it was cutover pasture land. All the improvements were north of the right of way; they consisted of fifteen tenant houses, ceiled and screened, a large barn where all the stock used in the cultivation of the place was cared for, toolhouses, and several cotton houses. One tenant house and two cotton houses were situated in the right of way. The evidence was to the effect that their value was approximately $500. The pasturage for all the stock on the place was south of the right of way, and there was a runway from the north to the south through which they went to the pasture. In order to cultivate the land on the south it is necessary to pass over the right of way from the north to the south.

The condemnation proceeding was under the authority of chapters 45 and 52 of Extraordinary Session of 1935 and chapter 201, Laws of 1936. It is therein provided that the land condemned shall be conveyed by the highway commission to the United States, and that the entire space on either side of the highway shall constitute a parkway owned and controlled by the federal government. The evidence tended to show that this parkway could not be crossed by anyone without a permit from the National Park Service, a branch of the Department of Interior of the federal government.

The evidence showed without conflict that the 101 acres was a part of the most productive land on the place, and all of it was in cultivation except 3 acres. The evidence for the Williamsons was to the effect that before the condemnation proceeding the entire place was worth from twenty-five to thirty-five thousand dollars, and after cutting it into two farms by taking out of the center of it this strip of 101 acres over a mile long, what was left was worth from ten to fifteen thousand dollars less.

The criterion to guide the jury was the fair market value of the land before the taking and the fair market

value of what was left after the taking. State Highway Commission v. Buchanan, 175 Miss. 157, 165 So. 795, 166 So. 537; Mississippi State Highway Department v. Blackburn, 172 Miss. 554, 160 So. 73; State Highway Commission v. Brown, 176 Miss. 23, 168 So. 277; Jackson v. Monroe County, 124 Miss. 264, 86 So. 769; Schlicht v. Clark, 114 Miss. 354, 75 So. 130. We cannot say with any degree of satisfaction that the award by the jury was so excessive as to evince passion or prejudice. In the Buchanan Case the court said that in condemnation proceedings a wide latitude was allowed as to values.

The highway commission requested the court to instruct the jury that there could be no recovery as compensation for damages on the ground that the Williamsons could not cross the right of way from one side to the other. This instruction was refused. The commission was granted an instruction, however, that unless the Williamsons had proven by a preponderance of the evidence that they would not be permitted to cross the highway from their land on one side to that on the other side, there could be no award of damages on that account. The evidence tended to show that this Natchez trace highway and parkway could not be crossed except at public highway crossings, unless permission so to do was granted by the National Park Service, and that such permits under the rules of that service were not granted for longer than a year at a time. We are unable to say that the highway commission was in any way harmed by the refusal of the instruction. To be forced to go around by way of a public crossing from one side of the land to the other would have a bearing on the value of what was left.

The other questions raised are of so little merit as not to call for a discussion by the court.

Affirmed.