STATE HIGHWAY COMMISSION v. DAY et al.

(Division A. May 9, 1938.)

[180 So. 794. No. 33134.]

**E. R. Holmes, Jr.,** Assistant Attorney-General, for appellant.

**Stone & Stone,** of Decatur, for appellees.

712

Argued orally by **E. R. Holmes, Jr.**, for appellant, and by **H. R. Stone, Sr.**, for appellee.

**McGowen, J.**, delivered the opinion of the court.

The Mississippi State Highway Commission, appellant, filed condemnation proceedings against Mrs. Ruth M. Day as owner, Federal Land Bank of New Orleans, La., mortgagee, and F. E. Taylor, a party in interest, appellees. That petition was filed with the circuit clerk, who by order directed that the presiding judge of the county court of Newton county be summoned to preside, and that a special eminent domain court be organized on a certain day named, which was in vacation. The circuit clerk issued a summons for eighteen jurors to appear then and there, from which a jury was to be selected by order of the judge of the county court. A jury of twelve men was impaneled, the evidence was submitted, the jury viewed the premises, and awarded the appellees $5,500, and judgment to that effect was entered.

Thereupon the appellant prosecuted an appeal to the circuit court on the transcript of the record made before the county judge and assignment of errors. The circuit court had the record submitted to it, and thereon affirmed the judgment of the eminent domain court. No request was made of the circuit court for a trial de novo, or objection of any kind interposed as to the procedure in that court.

A motion for a new trial was overruled; one ground of the motion being that the verdict was excessive.

The main assignment of error is that the verdict or award was excessive in that, over appellant's objection, improper elements of damages to the owner for taking the strip were allowed, and that the value of the land testified to by appellees' witnesses was unreasonable and unwarranted, and necessarily entered into the award by the jury. As no cross-appeal is prosecuted, we are not called upon to say upon whom rested the burden of proof as to value.

The land condemned was a hundred-foot strip running from south to north through the farm in question. The actual land taken was 12 3-10 acres, and was to be used in the construction of a new highway No. 15, which was to be hard surfaced. On the east side of the highway there were 742 acres on which were situated the dwelling houses, barns, outhouses, wells, troughs and water facilities for livestock. The dwelling house faced old highway No. 15, which was graveled and ran along the eastern line of this farm, and which was not to be disturbed. Running west from the dwelling house there was a lane leading to the pasture; this pasture contained 400 acres, was inclosed by fences, and was adapted for use as a grazing place for cattle. In addition to the pasture, there were a hundred acres of good corn and cotton land on the west side of the condemned strip.

The engineer of the appellant testified from the plans and specifications of the new highway that it proposed to construct approaches for a farm road a short distance

north, and some distance farther north it also proposed to construct a concrete culvert of sufficient dimensions to permit cattle to easily pass under. This culvert was to be located in a dry branch, and was mainly for the purpose of permitting water to pass through during rains or "wet" seasons.

With this general picture (admitted facts) we come now to the conflict of evidence as to the amount of award to the owner. Haddon, a witness for the owners, was asked this question by counsel for the appellees: "Mr. Haddon, what is the full measure of damages as you understand it that this property owner will sustain because of the running of this road through this property as it is run and for the purpose for which it is run, taking into consideration the fair market value of the land taken and all damages, if any, resulting to the other land and the other property as a direct result of the taking. That is, taking into consideration every element of damages that arises as you see it?" The witness answered, "$7000.00," and further stated that the land taken was average of the entire farm. On cross-examination he was questioned at length as to how he arrived at $7,000 as the value of the property. His replies summarized are about as follows: The value of the 12 3-10 acres actually taken amounted to $1,000; the entire farm was valued at $25 an acre; depreciation in fair value to the owner of the 500 acres west of the highway at $6 per acre, or $3,000, because of being cut off from the barns and water located on the east side; it would be necessary to build fences along the highway on both sides in order to use the pasture adapted to raising cattle. and this would amount to $650; a well would be needed to provide water for the pasture and this would be $750. and for general inconvenience and appearance. $1000. thereby reducing his general estimate from $7,000 to $6,400. In these figures the witness took into consideration the danger to cattle and to people crossing the highway. The appellant ob-

jected to the danger element, and its objection was overruled by the court.

Coker placed the entire compensation due the owners at $8,000, and arrived at this figure in about the same general way Haddon had adopted, except he placed the fair market value of the land taken at $1,800, or $150 an acre, evidently taking into consideration the depreciation to the whole farm by running the highway through it. He did not estimate any amount as to the depreciation of the 500 acres, but estimated a sum as compensation on account of danger to man and beast. His evidence, however, did not warrant a verdict in excess of $4,000.

Ware testified along the lines adopted by Haddon and Coker, but fixed $8,150 as compensation due the owner, the fair market value of all the land at $30,000, and of the 12 3-10 acres at $1,800. He thought a fence on both sides of the entire highway would amount to $600, and that $2,500 should be allowed because of the cattle having to cross the road; that $2,500 should be allowed for the 500 acres west of the road, and damages annually in upkeep of fence.

At the conclusion of the evidence of the last two witnesses, appellant moved to exclude their estimates of depreciation in value because neither of the witnesses had sustained the total testified to by methods proper to be considered by the jury in making an award to the owner; the amounts being speculative and imaginary. The motion was overruled.

A short time before the trial Mr. Taylor had made a written contract to purchase the land from Mrs. Day. He testified as a witness for appellant that the place was worth from $25,000 to $35,000. The consideration which he had agreed to pay was the amount of the mortgage debt, about $13,000, but he stated that there was other consideration, and he had obtained the land at a bargain.

Some witnesses for appellant fixed the value of the condemned land at $25 an acre, and the highest estimate of damages to the remainder did not exceed $1,200.

The only instruction the jury had was the form found in section 1491, Code of 1930.

After a careful study of all the evidence we feel that the verdict of the jury was excessive to the extent of two or three times a fair and just award. It will at once be observed that the appellees, by their examination of their witnesses, approximately but not entirely followed the rule found in the above instruction fixing compensation for the value of the land to the owner plus the damages to him as a consequence of the taking. Each of the witnesses had answered the question as to the value of the remainder of the land by fixing the total in his opinion, and in so doing considered as elements thereof such sums as the particular witness thought to be proper and lawful. Two witnesses for the appellees laid much stress on the danger to man and beast prospective on the use of the highway for motor vehicles. The court was in error in allowing the jury to consider such evidence in arriving at depreciation of the value of land. See Yazoo & M. V. R. R. Co. v. Jennings, 90 Miss. 93, 43 So. 469, 122 Am. St. Rep. 312.

Again the record inescapably shows that the evidence valuing the land actually taken at from $1,000 to $1,800 was purely speculative and unreasonable. The highest value placed on the entire acreage in the farm was $29 an acre, whereas the jury was allowed to consider a range of from $80 to $150 an acre. Where no peculiar, special, or different value is shown to be inherent in the lands taken from that of its entire tract, there can be no valid reason why the condemnor should not pay the owner the average value per acre.

In fixing the compensation due the owner, these witnesses fixed a depreciation of the value of the 500-acre tract because the highway cut it off from the remainder, and then pyramided the damages by estimating the costs of fences, wells, and the like to bring it back to the status of a stock farm, taking into consideration the contention

that the west tract was peculiarly adapted to cattle raising.

Appellees say, however, that the objection of appellant to the testimony of Ware and Coker was at the close of the evidence of each, and should have been interposed as the cross-examination proceeded. There was no other way it could have been presented intelligently. Ware, for reasons which only he knew, testified that the owner should be awarded $8,100 for the land taken and the damage to the remainder of the tract. Until the witness had shown that his estimate as to the total was unsound, which was after all his evidence was heard, no one could say that his original estimate was wrong. The complete cross-examination was required to demonstrate the facts.

Appellees further urge that we must uphold the award because Haddon's evidence which the jury had a right to believe upholds and sustains it. His evidence viewed in the strongest light does not sustain a verdict for as much as $3,500. Haddon duplicated his so-called damages, said that the west tract would depreciate $3,000 in value because it would be separated from the remainder of the farm, and then proceeded to add to this amount the cost of fences and wells and the like to restore it to a stock farm status.

In this case the jury had no more guide than would have been invoked in an eminent domain court if a justice of the peace had been a part of such court. The jury should have been advised by the evidence that the measure of damages to be awarded to the owner should be the difference between the market value of the entire tract before and after the taking. Sullivan v. Board of Supervisors, 61 Miss. 271; Balfour v. Louisville, N. O. & T. R. R. Co., 62 Miss. 508; Schlicht v. Clark, 114 Miss. 354, 75 So. 130; City of Jackson v. Wright, 151 Miss. 829, 119 So. 315; Mississippi State Highway Dept. v. Blackburn, 172 Miss. 554, 160 So. 73; State Highway Comm. v. Chatham, 173 Miss. 427, 161 So. 674; State Highway Comm. v.

Brown, 176 Miss. 23, 168 So. 277; Mississippi State Highway Comm. v. Williamson (Miss.), 179 So. 736.

While this case was peculiarly one for the rule stated in the cases, supra, it is true that each case must be governed by its own circumstances. Kwong v. Board of Mississippi Levee Com'rs, 164 Miss. 250, 144 So. 693.

The mass of figures hurled at the jury in this case as elements of damages no doubt confused them and wrested the verdict here reviewed.

The object of our statute is to enforce section 17 of the Constitution of 1890 in so far as to ascertain what amount the owner fairly loses when his land is taken by eminent domain for public improvement, and the many items which may arise in a case in so far as they show a depreciation of the owner's property by the taking are never competent as separate items of recoverable damage. See Schlicht v. Clark, supra.

We are of the opinion that chapter 247, Laws of 1936, simply conferred upon the judge of the county court that jurisdiction which had been conferred upon the county court in term time. If the appellant was not entitled to a trial de novo on appeal from the county court to the circuit court, then the appeal from the award of the county court judge does not alter that situation. The Highway Commission prosecutes its appeal here, and had presented it to the circuit court on the record, in accordance with the decisions of this court in the cases of State v. Carraway, 160 Miss. 263, 134 So. 846, and City of Hattiesburg v. Pritchett, 160 Miss. 342, 134 So. 140. In those cases it was held that the circuit court did not err in refusing to grant the appellant an appeal from an award of a county court, a trial by a jury de novo. However, in those cases, section 693, Code of 1930, as amended by Laws 1936, c. 247, as to practice and procedure in cases arising formerly in a general justice of the peace court or a special tribunal thereof, was not cited by the court nor called to the attention of the court. In the case at bar we will not now consider the serious question as to

practice and procedure in county courts and on appeal therefrom, for the reason that the judgment of the circuit court on appeal herein was not void, and the proper construction to be placed on section 693 was not raised in the courts below, nor here.

Reversed and remanded.