MISSISSIPPI STATE HIGHWAY COMMISSION *v.* COLONIAL INN, INC., et al.

No. 42465          February 18, 1963          149 So. 2d 851

*Jacobs, Griffith & Hatcher,* Cleveland, for appellant and cross-appellee.

*Alexander, Feduccia & Alexander,* Cleveland, for appellee and cross-appellant.

ETHRIDGE, J.

This is an eminent domain proceeding brought by the Mississippi State Highway Commission, appellant, in the County Court, Second District of Bolivar County, against Colonial Inn, Inc. and other owners of interests in the real property. The jury returned an award of $20,000, but the circuit court, on appeal, ordered a remittitur of $10,790, thus allowing Colonial Inn damages of $9,210. From this judgment the Commission has taken a direct appeal, and Colonial Inn a cross appeal.

U. S. Highway 61, running in a north-south direction through the City of Cleveland, is intersected by State Highway 8, running in a east-west direction. On the northwest corner of this intersection is a gasoline service station, and north and west of this is the Colonial Inn, a motel. All of this property is on sixteenth section, school land, in which appellees held an unexpired leasehold interest with approximately twenty-three years remaining. Bolivar County owns the reversionary interest. With the Colonial Inn property being located on the west, Highway 61 has a present width of 80 feet. It consists of a two-lane concrete road, 24 feet wide. Under the new plans, a 14-foot safety or median strip is to be constructed along the center of the highway. There will be two traffic lanes on the east side of this median strip and two on the west side. All northbound traffic will travel on the east side, and southbound on the west side.

The construction plans call for a turning lane on the west side of Highway 61, beginning several hundred feet north of the Highway 8 intersection, to be used by southbound traffic, which would be able to turn west into Highway 8 and the city, without being controlled by a traffic light at the intersection.

There are thirteen motel units in a north-south line along the west side of Highway 61. These units face west, with their backs toward Highway 61. Other motel units form an open square on the north, west and south sides of the property. The proposed turning lane for a west turn on Highway 8 into the city begins at a point about 138 feet north of the southernmost of the thirteen motel units, adjacent to Highway 61. It starts at a point opposite the No. 6 motel unit, counting from south to north, of the thirteen units, and slants in a southwesterly direction for 50 feet. From there to the south, the extra property taken by the turning lane consists of a strip of land 5 feet in width, and 159 feet in length. North of this is a triangular piece with a 5-foot base and 50 feet in length. Also taken by the Commission was an easement held by Colonial Inn in a strip of land 20 feet in length and 5 feet in width, which was also used for ingress and egress to the motel, at the south end of the land taken. The total area taken is approximately .02 of an acre. The south 40 feet of the 5-foot strip taken is presently being used as part of a driveway into the motel.

Of the 5-foot-wide strip being taken, the west 3½ feet, nearest the motel, will be used for drainage purposes. When drainage is constructed, sod will be placed over this 3½ foot area. The next 6 inches of this 5-foot strip will be curb for the new highway. The east 1 foot of the 5-foot strip will be part of the concrete slab used as the turning lane, which southbound traffic will use when it intends to turn right into the city. The Colonial Inn consists of 52 motel units. Its entrance

is on Highway 61 near the intersection of Highways 8 and 61. Prior to the taking, the western walls of the 13 motel units near the highway were 45 feet from the concrete travelled portion, and 14 feet from the highway property line. The property line of the highway, by the condemnation, was moved from 14 to 9 feet from the walls of the units next to Highway 61. The travelled portion of the highway, 45 feet from the wall of the motel before the taking, was moved to 13 feet from it, after the taking.

Four appraisers testified. Three of them, for the Commission, concluded, under the before and after rule, that appellees' total damages aggregated, respectively, $2,610, $1,595, and $1,700. They did this by subtracting from the damages the value of the reversionary interest of Bolivar County, and adding special damages to shrubbery and cost of moving a sign.

Appellees' only expert witness on damages was Jack K. Mann, an experienced appraiser, who stated the following: The motel has three functional deficiencies: location of the entrance near the intersection of two highways, making it difficult to get in and out; the proximity of 13 motel units to the highway, including the fact that baths and closets are constructed on their west rather than east sides, and do not serve as a buffer to noise and vibration; and the identification of the entire property "is rather poor. It is hard to see." Appraising the market value of this commercial property, Mann thought that reproduction cost less depreciation should not be given much weight; the market approach, sales of similar property, was not available. He estimated the annual income, based on audited figures and expenses, arrived at the net income, and through a capitalization process converted that into an indication of value. It was "the best criterion of value on this property."

The market value of the property before the taking was $230,500, and after it, $183,500, or a difference of $47,000. There were two elements of damage: (1) That resulting from installation of the median strip in the highway, which Mann correctly concluded was a non-compensable item. Muse v. Miss. State Highway Comm., 233 Miss. 694, 103 So. 2d 839 (1958). (2) The damage attributable to proximity of the highway traffic after the taking, as contrasted with what it was before. As "primarily a judgment figure," he concluded that $7,400 of the $47,000 was attributable to taking of the 5-foot strip. The highway pavement was being moved 32 feet closer to the motel, but most of that was being placed on the present highway right-of-way. The remainder, 5 feet, which was being taken, was approximately 15% of the aggregate additional pavement of 32 feet. The compensable severance damage was $5,200, the value of the part taken, $2,200, totaling $7,400 damages. If the Commission were not taking the five feet, there would be no compensable severance damages. His opinion of the depreciated cost of the sign was $850, without particular reference to raising or moving it.

*First.* The circuit court, reducing the judgment to $9,210, computed it in this manner:

| | |
|---|---|
| Compensable severance damages | $5,200 |
| Value of land actually taken | 1,710 |
| Cost of moving and raising sign | 2,200 |
| Cost of moving shrubs | 100 |
| Total | $9,210 |

The trial court concluded that the jury would have been justified in finding this amount as damages. The judgment of the circuit court, ordering a new trial unless the stated remittitur was accepted, should be affirmed. (Hn 1) The general rule is that the action of a trial court upon a motion for a new trial is to be favorably con-

sidered upon appeal and supported, unless manifest error appears, or unless its action in sustaining the motion shows a manifest abuse of discretion. This rule is particularly applicable where a new trial has been granted, since in such cases the rights of the parties are not finally settled, as they are where a new trial is refused. Womble v. Miss. State Highway Comm., 239 Miss. 372, 123 So. 2d 235 (1960). (Hn 2) The order for a new trial, unless remittitur was accepted, was not manifestly erroneous or an abuse of discretion, but was entirely justified.

R. N. Bond, staff appraiser for the highway department, fixed $1,710 as value of the land actually taken by the Commission in this proceeding, under the before and after rule. The circuit court accepted that figure. The other two witnesses for the Commission had lesser figures, and Mann fixed it at $975. However, in reviewing the verdict, the jury was warranted in accepting Bond's testimony on this proposition, the value of the land actually taken. The uncontradicted testimony as to value of the shrubs taken was $100, so the circuit court accepted that figure.

The three appraisers for the Commission fixed the cost of moving but not raising the motel sign at $800. Mann said its depreciated cost as it stood, without reference to moving or raising, was $850. It was necessary for the sign to be moved and raised. Paul Belenchia, in the sign business, said it would cost $2,200 to move and raise the sign 18 feet above the ground, in order to clear the motel roof and for it to be clearly visible. There is no other evidence as to the cost of both moving and raising. The jury would have been justified in finding this amount. None of the Commission's witnesses contradicted this figure of $2,200, and, although it was generous, we can not say the circuit court abused its discretion in utilizing it as one element of the directed remittitur.

*Second.* The remaining figure (in the aggregate judgment approved upon remittitur) is $5,200 as compensable severance damages. Mann concluded they resulted from increased proximity of highway traffic to the motel units after the taking, as contrasted with traffic before the taking. This was based on allocation of a ratio of 5 feet (land taken) to 32 feet, the gross additional proximity of the highway pavement, including 27 feet on the right-of-way already owned by the Commission.

Appellant contends that Mann's figures for compensable severance damages are erroneous because he based loss of the motel's value upon the assumption the highway was 32 feet closer to 13 motel units, although seven of them were not opposite any land which was actually taken. However, his testimony does not support that argument. Mann said that, if the Commission were not taking the 5-foot strip, the value after the taking would be the same as before it; in other words, if the strip were not taken, there would be no severance damages. He included in his appraisal the fact that six of the units were adjacent to the property actually being taken.

(Hn 3) In the instant case, part of the owner's land has been taken. The remainder abuts on the highway, and defendants are entitled to compensation for injuries to it caused by the noise, vibrations, and increased proximity of the highway traffic allocated to the additional land taken. Compensation for such injury is allowed, not as a distinct element of damages, but only as affecting the market value of the property. Moreover, the injury must be special, and not such as is common to all the property in the neighborhood. 29 C.J.S., Eminent Domain, Sec. 171; 18 Am. Jur., Eminent Domain, Secs. 266, 269, 260, 135, 192, 285.

State Highway Commission v. Chatham, 173 Miss. 427, 161 So. 674 (1935), upon which appellant relies, illustrates this distinction. No increase in the amount to

be awarded arose solely because of the location of the highway adjacent to the property, and in respect to any detriment on that account which is shared by all others of the public similarly situated. However, the court pretermitted a decision on any substantial element of damages to the non-appropriated portion of the property, which might be classified as a physical invasion of it, and in which the injury is special and peculiar to the particular owner, as distinguished from all others of the public similarly situated. 173 Miss. at 435. Here the severance damages to the remainder not taken is special and peculiar to the particular owner, the motel, a commercial business, and is distinguished from non-compensable damages to all others of the public similarly situated.

Mississippi Constitution, 1890, Sec. 17 requires due compensation for private property "taken or damaged for public use." The jury was justified in finding, upon Mann's testimony, compensable severance damages of $5,200, because of the increased proximity of the highway traffic, resulting from the taking of the strip of land five feet in width. The Massachusetts increased-proximity rule, and that allowing recovery of damages resulting from construction and operation of public works which have been erected on land taken from the owner, present from a practical standpoint difficulties of application. 1 Orgel, Valuation Under Eminent Domain (2d ed. 1953), Secs. 55, 56, 57, 58. We do not adopt either of these rules, but for present purposes the jury was warranted in accepting Mann's analysis of compensable severance damages, which was reasonable under the circumstances.

(Hn 4) The generally accepted doctrine is that any type of damage may be considered insofar as it impairs the "fair market value" of the remaining property. The jury is not necessarily restricted to certain common, stereotyped forms of damages, but all special dam-

ages must be considered in their bearing on market value and not as separate items of compensation. Miss. State Highway Comm. v. Hillman, 189 Miss. 850, 198 So. 565, 571 (1940); 1 Orgel, Sec. 58.

(Hn 5) Where part of a tract is physically appropriated, the condemnor should pay severance damages, i. e., the depreciation in the fair market value of the remaining area. 1 Orgel, Sec. 49; 2 Nichols, Eminent Domain (3d ed. 1950), Secs. 6.441(3), 6.4432(2); Jahr, Eminent Domain (1953), Sec. 49; Spies & McCoid, Recovery of Consequential Damages in Eminent Domain, 48 Va. L. Rev. 437, 441 (1962). This principle has been almost universally applied in other states, and is in accord with the decisions in this state. It is summarized by Jahr, Sec. 50, in this way:

"The just compensation in cases involving a partial taking is generally the value of the part taken plus all the damages which the residue of the property suffers, including a diminution in the value of the remainder by reason of the lawful use to which the portion acquired will be put. Anything less than the foregoing would encroach upon the constitutional guarantee of just compensation."

*Hillman* holds that the award should constitute the difference between the fair market value of the whole tract immediately before the taking, and the fair market value of that remaining immediately after the taking, without considering general benefits or injuries that are shared by the general public. One of the elements in diminution of market value of the land remaining after the taking "is the use to which the land taken is to be put. The owner of the land is not restricted to the recovery of damages to the remainder from the mere taking of a part thereof, but is entitled to recover all special damages that may result to the remaining land from the public use to which the part taken is to be put." 189 Miss. at 868. These principles were further defined

in Baker v. Miss. State Highway Comm., 204 Miss. 166, 37 So. 2d 169 (1948).

In summary, the compensable severance damages of $5,200 are properly allowable in the verdict and the judgment of the circuit court. After remittitur, its judgment of $9,210 is supported by substantial evidence, and was not manifestly erroneous or an abuse of discretion. Nor were there any reversible errors in the evidence, as assigned by appellant. Moreover, in most instances the objections were sustained.

(Hn 6) On cross appeal by Colonial Inn, the evidence offered by appellees on cost of repairing the motel units next to the highway was properly excluded because it was speculative, was not apportioned to damages caused by the taking, and no proper predicate was laid for it. Ingress and egress to and from the motel represented in part at least a functional deficiency in its original construction. There was no error in refusing defendant's requested instruction. The jury was adequately instructed on damages, and the one in question would have been cumulative. Moreover, it was misleading by putting emphasis upon "loss of business or profits" resulting from increased proximity of the highway, even though it contained a savings clause. Its reference to "the cost of remedying the situation" would have invited speculation on inadequate evidence without proper predicate.

On both direct and cross appeals, affirmed, provided appellees accept remittitur within 10 days; otherwise, reversed and remanded on direct appeal, and affirmed on cross appeal.

*McGehee, C. J., and Kyle, Gillespie, and McElroy, JJ.,* concur.