423 So.2d 808 (1982)
Vernon SMITH, James G. Norman, Travis Wallace and Duran Barnes
v.
MISSISSIPPI STATE HIGHWAY COMMISSION.
No. 53493.
Supreme Court of Mississippi.
December 8, 1982.
*809 Smith, Downs, Ross, Trapp & Coleman, Donald Ray Downs, Corinth, for appellants.
James P. Dean, Corinth, for appellee.
En Banc.
ROY NOBLE LEE, Justice, for the Court:
A Special Court of Eminent Domain in Alcorn County, Honorable Neal B. Biggers, Jr., presiding, entered judgment for Vernon Smith, James G. Norman, Travis Wallace, and Duran Barnes, landowners, against the Mississippi State Highway Commission [Commission] in the sum of ninety-three thousand four hundred twenty-five dollars ($93,425.00) as compensation for the taking of 33.62 acres of land. The landowners, being aggrieved at the judgment, have appealed here and assign four (4) errors in the trial below:
(1) The lower court erred in excluding the testimony of Betsy A. Hanson concerning the purchase of a lot in the subdivision.
(2) The lower court erred in excluding certain photographs of comparable housing.
(3) The lower court erred in granting Instruction P-2 which concerns inconvenience as an item of compensation.
(4) The lower court erred in allowing the jury to view the property in the absence of the trial judge and court reporter.
The appellants are owners and partners in the development of 207.5 acres in Alcorn County, known as the "Spring Valley Subdivision." On May 23, 1980, the Commission filed an application for a special court of eminent domain, pursuant to Mississippi Code Annotated § 11-27-81, et seq. (Supp. 1981), to condemn 33.62 acres of said area and for the immediate possession of the property in order to construct a controlled access highway, together with an accompanying frontage road, in connection with U.S. Highway 45. The Commission's original statement of values filed June 2, 1980, estimated the total just compensation for the taking at one hundred thousand four hundred fifty dollars ($100,450). The appellants' statement of values states these same elements of damage at two hundred ninety-five thousand four hundred eighty-seven dollars ($295,487.00). The court appointed an independent appraiser to determine the compensation, and he fixed same at one hundred thirteen thousand dollars ($113,000). *810 Prior to the trial, the Commission amended its statement of values and lowered its estimate of compensation due the owners to sixty-three thousand three hundred fifty dollars ($63,350). During the trial, the Commission's experts testified to a higher figure, and the lower court granted a motion by the landowners (appellants) that the Commission's statement of values be amended to reflect the high amount of ninety-one thousand three hundred dollars ($91,300), which was sustained. The landowners were also allowed to amend their estimated compensation value to three hundred thirty-two thousand one hundred sixty dollars ($332,160).
Three qualified expert appraisers testified for the Commission. Their values follow:

 Value Value
 Before After
 Taking Taking Compensation
J.W. Dilmore $ 454,725 $ 391,375 $ 63,350
Fred Spencer 549,900 458,600 91,300
Houston Evans 523,432 439,450 83,982

In addition to the testimony of appellants and other lay witnesses, appellants introduced three qualified experts and appraisers (Vernon Smith, Landowner, being one of the witnesses) who testified to the value of the property:

 Value Value
 Before After
 Taking Taking Compensation
James R. Laughlin $1,067,392 $ 774,405 $ 292,987
Phil Atkins 1,081,340 762,330 319,010
Vernon Smith 1,365,000 1,041,260 323,640

The jury, having heard all the evidence, viewed the property, received the instructions of the court, heard arguments of counsel, and returned a verdict for compensation in the amount of ninety-three thousand four hundred twenty-five dollars ($93,425.00).

I.
Did the lower court err in excluding the testimony of Betsy A. Hanson concerning the purchase of a lot in the subdivision?
During the Commission's case in chief, one of its appraisers testified concerning the sell-off rate of lots in the Spring Valley Subdivision area, and compared their sale rates to other subdivisions. He gave his opinion that the causes for Spring Valley's lower sell-off rates were poor asphalt, open ditches, and sewage system. In order to rebut that claim, the appellants attempted to call Mrs. Betsy A. Hanson as a witness. According to the offer of proof, she would have testified that she and her husband had agreed to purchase a lot, but when they learned that the highway was taking the property involved here, they decided against it for that reason. The court sustained an objection to her testimony, in the following words:
BY JUDGE BIGGERS: All right, gentlemen, it is already in the record before the jury by several witnesses including the property owners that the lots were not sold to some extent because of the impending construction of the highway. I think the jury is adequately apprised of that already and the previous ruling of the Court will stand sustaining the objection to any individual person coming in and testifying that that particular person would not buy a lot because of the highway. As I have previously stated, that would open up the door to the State being able to rebut this by finding someone who might come in and say that they would rather find a lot that was close to a four-lane highway, that it would put him on easy access to traveling somewhere. What we are dealing with here is the general situation and not individual preferences or individual persons, I don't want to get into specific likes or dislikes of buyers, prospective buyers. I think the jury is adequately apprised of what the general situation is. That objection to the witness' testimony will also be sustained.
We are of the opinion that the testimony of Mrs. Hanson would single out and show the preference of one individual, which is not competent on the issue of damages and compensation, when other people probably have different preferences. Mississippi State Highway Commission v. Hillman, 195 So. 679 (Miss.), sugg. of err. overruled, 189 Miss. 850, 198 So. 565 (1940).
*811 In addition, Duran Barnes, a landowner, testified that no lots had been sold after he told prospective buyers about the highway, and Vernon Smith testified that the people he took to see the property didn't want their house to be backed up on the highway. James Laughlin, an expert appraiser for the appellants, testified that the lots in Spring Valley Subdivision did not sell well because of the highway project. Therefore, the general situation, within the knowledge of persons who knew the property, was in evidence, and it was not error to exclude the testimony of Mrs. Hanson.

II.
Did the lower court err in excluding certain photographs of comparable properties?
The appellants offered in evidence photographs of two houses in Patrick Subdivision, which subdivision was used as comparable property by the Commission's witnesses in arriving at compensation. Also, photographs of eleven houses that had been built in the Spring Valley Subdivision were offered. The court sustained objections to all said photographs.
The appellants contend that the photographs of the two houses in Patrick Subdivision showed that the property did not compare favorably with the quality of housing in the Spring Valley Subdivision, and that the houses in Spring Valley Subdivision were superior to those in the other area.
Neither the Commission nor the appellants offered in evidence any instrument constituting a restrictive covenant on either Spring Valley Subdivision or Patrick Subdivision. All appraisers for the Commission referred to the fact that there was a protective covenant on Spring Valley Subdivision. Appraiser Dillmore was vague as to the protective covenant and only stated that it was restricted to residential buildings, that some houses were restricted to not less than approximately fifteen hundred (1,500) square feet of heated space, some were restricted to about twelve hundred (1,200) square feet of heated space, that he believed the smallest house was approximately one thousand (1,000) square feet, and no mobile homes were permitted on the property.
Appraiser Spencer testified that he had examined the restrictive covenant but he didn't recall it. He took into consideration, as a comparable, lots of the Spring Valley Subdivision which already had been sold. Appraiser Evans stated there was a protective covenant as to two hundred seven (207) acres but that covenants did not tend to increase or decrease the value of real estate.
The lower court, in sustaining objections to the photographs, said:
I don't think we ought to clutter up the record any more with houses from another subdivision and show that another subdivision is less expensive than the one we are talking about any more than I would allow the State to bring in pictures of houses out in Chandler Park and show pictures of Dr. Davis' house which the appraisers for the property owners used as a comparable subdivision, to show that they are more expensive, that there are houses in that subdivision that are more expensive than the houses in the subject subdivision. It is just so far removed from the issue that we are talking about, we are not taking any houses in this case, there are no houses being involved in the taking and I think it is just a little far removed from what we are really concerned with in the case and also as far as the photographs of the houses in the subdivision, the jury is going to see the actual houses themselves and that is better than the photographs and so all the photographs in those two offerings will be denied.
The property being condemned by the Commission constituted vacant lots and had no houses upon it. The jury viewed the property and could see houses which had already been built. The comparable sales used by the appraisal witnesses to support their estimates were adjusted upward. Appraiser Spencer for the Commission put values of four thousand dollars ($4,000) per lot on the property taken, which was the exact *812 per lot value for lots in Spring Valley Subdivision testified to by the appellant landowner Vernon Smith.
The admissibility of photographs is within the sound discretion of the trial court and it has a wide latitude in admitting them. The trial court's ruling will not be held error unless there is a clear abuse of discretion. Nelson v. Phoenix of Hartford Insurance, 318 So.2d 839 (Miss. 1975); Butler v. Chrestman, 264 So.2d 812 (Miss. 1972); Crawford v. City of Meridian, 186 So.2d 250 (Miss. 1966); 29 Am.Jur.2d Evidence, § 785, at 859 (1967).
We are of the opinion that the lower court did not abuse its discretion in declining to admit the photographs in evidence and that it was not reversible error to sustain the objection to the photographs.

III.
Did the lower court err in granting Instruction P-2, which relates to inconvenience as an item of damage?
The court granted Instruction P-2, requested by the Commission, which follows:
The Court instructs the Jury that in arriving at your verdict, you shall not consider any elements of inconvenience or other elements of damage which are speculative or remote.
Mississippi cases are conflicting as to whether or not such an instruction should be granted, and, under what circumstances it may be granted. The facts and circumstances of each case must be considered to determine whether or not it is proper to give the instruction. State Highway Commission v. Day, 181 Miss. 708, 180 So. 794 (1938). Inconvenience to the landowner as a result of taking the land is not in itself an element of damage unless such inconvenience amounts to damage that is special to the landowner and does not apply to the public generally. In Mississippi State Highway Commission v. Colonial Inn, 246 Miss. 422, 149 So.2d 851 (1963) and Mississippi State Highway Commission v. Gipson, 240 So.2d 620 (Miss. 1970), damages were allowed for elements that may be considered as inconvenience. In Colonial Inn, a 52-unit motel was situated on a small tract of land extremely close to the highway. This Court held that the defendants were entitled to compensation for injuries to it caused by noise, vibrations, and increased proximity to highway traffic, not as a distinct element of damages, but as affecting the market value of the property. The appraisal witness gave his opinion that the motel would suffer some inconvenience due to the close proximity of the highway.
In Gipson, the highway was constructed within fifty-three (53) feet of the defendant's home, which was situated on a lot one hundred eighty-three (183) feet by one hundred forty-two (142) feet, and it was held that the market value of the property in that quiet residential subdivision would be adversely affected.
In New v. State Highway Commission of Mississippi, 297 So.2d 821 (Miss. 1974), the Court said:
[E]vidence offered by the landowners to the effect that they would have to travel further in one direction after a median strip was built in the highway is not admissible as an item of damage, since the landowners have an entrance into the highway and a mere inconvenience is not an item of damage in this case. [297 So.2d at 824].
See also Mississippi State Highway Commission v. Daniels, 235 Miss. 185, 108 So.2d 854 (1959); Muse v. Mississippi State Highway Commission, 233 Miss. 694, 103 So.2d 839 (1958).
This Court approved as an item of damages inconvenience due to diminution of access in Mississippi State Highway Commission v. Null, 210 So.2d 661 (Miss. 1968), and Mississippi State Highway Commission v. Stout, 242 Miss. 208, 134 So.2d 467 (1961). In Null, the property involved was commercial property and in Stout the property that remained, 3.17 acres, was totally landlocked after the taking.
The Court held in Mississippi State Highway Commission v. Hurst, 349 So.2d 545 (Miss. 1977), that:

*813 [T]estimony of damages sustained by reason of the construction of the median and damages for inconvenience resulting from increased noise, pollution, and dust ... were general to the neighborhood and public, were not specific damages to appellees, and testimony thereasto should have been excluded. Daniels v. Board of Supervisors of Clarke County, 323 So.2d 748 (Miss. 1975); Muse v. Mississippi State Highway Commission, 233 Miss. 694, 103 So.2d 839 (1958). [349 So.2d at 546].
See also Mississippi State Highway Commission v. Fleming, 242 Miss. 402, 135 So.2d 821 (1962).
In Mississippi State Highway Commission v. Hillman, 195 So. 679 (Miss.), sugg. of err. overruled, 189 Miss. 850, 198 So. 565 (1940), the Court said:
It was error to admit evidence with reference to inconveniences resulting to appellees from the establishment of the highway. State Highway Commission v. Chatham, 173 Miss. 427, 161 So. 674; New Orleans, etc., Railroad Co. v. Brown, 64 Miss. 479, 1 So. [637] 673; Yazoo & M.V.R. Co. v. Jennings, 90 Miss. 93, 43 So. 469, 122 Am.St.Rep. 312. Inconvenience is so speculative and unsubstantial that it is not an element of actual damage. It is not susceptible of proof with any degree of certainty. What would be an inconvenience to one person might not be to another. The measure of damages in a condemnation proceeding is the difference between the fair market value of the land before the taking and the fair market value of what remains after the taking. State Highway Commission v. Brown, 176 Miss. 23, 168 So. 277; State Highway Commission v. Williamson, 181 Miss. 399, 179 So. 736, and other decisions of our Court referred to in the opinions in those cases. The evidence of damages resulting from inconvenience was brought out in such a manner as that the jury might have reasonably reached the conclusion that it was to be added to the actual damages shown. [195 So. at 681].
The facts of the case sub judice and those in Rasberry v. Calhoun, 230 Miss. 858, 94 So.2d 612 (1957), are similar. In Rasberry, the lower court gave the exact instruction as in this case, and this Court held the instruction not to be reversible error.
In Mississippi State Highway Commission v. Stout, supra, the Commission condemned land for highway purposes and a 3.17-acre plot was left without access. The lower court refused to grant the identical instruction given here, and this Court held that the trial court acted properly and that "[a]ppellee was not entitled to recover anything for inconvenience as a separate item of damage, but it would have been error to give the instruction... . This is especially true ... where some of the remaining land is rendered inaccessible to the owner, ..." [242 Miss. at 220, 134 So.2d at 471].
The lower court granted appellant's Instruction D-3 and the Commission's Instruction P-5 [See Appendix]. Those instructions properly instructed the jury on damages and, when all the instructions are read and considered together, we are of the opinion that the appellants could not have been prejudiced or confused by Instruction P-2, and that giving the instruction in this case does not constitute reversible error.

VI.
Did the lower court err in allowing the jury to view the property in the absence of the judge and court reporter?
During the trial, the Commission moved the court that the jury be permitted to view the property being taken together with adjacent property. The appellants objected and requested that the view be taken after both sides had completed the evidence. The lower court sustained the objection and granted the request of appellants.
After the parties had introduced all their evidence, the court directed that the jury be taken to the scene of the property and permitted to view the same, accompanied by the bailiffs. The trial judge, attorneys for the parties, and court reporter did not go with the jury to the property. They remained in the courthouse working on instructions. No objection was made by the *814 appellants to such procedure. Before the jury left the courtroom to view the property, the court charged it in the following words:
The parties have made a motion to the Court that the Court allow you to be transported out to the scene of this property for the purpose of viewing it. That was made day before yesterday and I promised them that I would let you go take a look at it if it was not raining and they have stalled around long enough so that the rain has passed over, so I guess I will have to let you go. The purpose of this is to allow you to take a look at it and draw any conclusions that you can or you wish to from the observations of the property. There will be no testimony taken out there at the scene, the only conversation that would be had out there would be for the purpose of pointing out to you the boundaries of the property that will be taken. We will let the project engineer go along and point out to you where the right of way acquisition is going to be coming through this property. If you have any questions that you want to ask him about the boundaries of the property, feel free to do so, but that will be the extent of any dialogue between the jury and anyone else at the scene. Ladies and gentlemen of the jury, I am going to let you go back to the jury room and the bailiff will come back and get you and take you out there to the scene under the instructions that I have announced to you. They should be back very shortly, you may go back to the jury room.
When the jury returned from viewing the property, appellant still made no objection to the procedure followed and to the fact that the judge, court reporter and attorneys did not accompany the jury to the property. After the jury verdict was returned, appellants filed a motion for new trial and assigned as a ground that while the jury was viewing the property, the judge, court reporter and attorneys remained at the courthouse; that when the jury was upon the property, an alternate juror stated that "I do not see where they are hurting these good old boys" and "This sure is a pretty farm;" and that as the jury arrived upon the property, two black men and two white women were seen together in a romantic situation. The appellants claimed prejudice on account of these incidents.
There are two statutes which deal with a jury view of land. They follow:
§ 11-27-19. Evidence  award  arguments of counsel  instructions.

Evidence may be introduced by either party, and the jury may, in the sound discretion of the judge, go to the premises, under the charge of the court as to conduct, conversation, and actions as may be proper in the premises. Evidence of fair market value shall be established as of the date of the filing of the petition. Any judgment finally entered in payment for property to be taken shall provide legal interest on the award of the jury from the date of the filing of the petition until payment is actually made; provided, however, that interest need not be paid on any funds deposited by the petitioner and withdrawn by the defendants prior to judgment. At the conclusion of the trial, either party, by himself or counsel, may argue the case and the court shall instruct the jury as may be requested by counsel for the parties and as a court may consider proper in the premises. All instructions requested, whether given or denied, shall be clearly marked and filed and such shall be a part of the record as in other cases before the court. Miss. Code Ann. § 11-27-19 (1972).
§ 13-5-91. Jury may view the place.

When, in the opinion of the court, on the trial of any cause, civil or criminal, it is proper, in order to reach the ends of justice, for the court and jury to have a view or inspection of the property which is the subject of litigation, or the place at which the offense is charged to have been committed, or the place or places at which any material fact occurred, or of any material object or think in any way connected with the evidence in the case, the court may, at its discretion, enter an order providing for such view or inspection *815 as is herein below directed. After such order is entered, the whole organized court, consisting of the judge, jury, clerk, sheriff, and the necessary number of deputy sheriffs, shall proceed, in a body, to such place or places, property, object or thing to be so viewed or inspected, which shall be pointed out and explained to the court and jury by the witnesses in the case, who may, at the discretion of the court, be questioned by the court and by the representative of each side at the time and place of such view or inspection, in reference to any material fact brought out by such view or inspection. The court on such occasion shall remain in session from the time it leaves the courtroom till it returns thereto, and while so in session outside the courtroom it shall have full power to compel the attendance of witnesses, to preserve order, to prevent disturbance and to punish for contempt such as it has when sitting in the courtroom. In criminal trials all such views or inspections must be had before the whole court and in the presence of the accused, and the production of all evidence from all witnesses or objects, animate or inanimate, must be in his presence. Miss. Code Ann. 13-5-91 (1972). (Emphasis added)
Effective January 1, 1972, all the eminent domain statutes previous to that time were repealed and an entirely new eminent domain procedure became effective [Chapter 27, Mississippi Code Annotated (1972)]. Section 11-27-19 repealed Section 2770, Mississippi Code Annotated (1942), which provided:
§ 2770. Jury may view property.

Either party to the suit, on application to the court, shall be entitled to have the jury view the property sought to be condemned and its surrounding under the supervision of the judge; or, the judge on his own initiative may so order.
Section 13-5-91 appears under Chapter 5 entitled "Juries," Mississippi Code Annotated (1972). It is a general statute with reference to juries' viewing property or the scene of the crime, or where any material fact occurred and the statute has been in existence since prior to 1892.
In Gunn v. Mississippi State Highway Commission, 229 So.2d 828 (Miss. 1969), the case was tried in a special court of eminent domain in Kemper County. The judgment was appealed to the circuit court and a verdict was entered awarding damages in the sum of thirty-seven hundred fifty dollars ($3,750.00). Gunn appealed to this Court, and the question for decision was whether the lower court erred in allowing the jury to view the property in the absence of the judge and court reporter.
The landowners' attorney requested the court to have the jury view the property, which was granted. Immediately after the jury viewed the property, the landowners' attorney moved for a mistrial on the ground that neither the judge nor the court reporter went with the jury to view the property during which the highway department engineer answered questions propounded by some of the jurors.
This Court held Section 1800, Mississippi Code Annotated (1942) [Mississippi Code Annotated § 13-5-91 (1972)] was the controlling statute with reference to the view of property by the jury, and quoted the section in part. The Court then said:
The trial court committed reversible error in allowing the jury to view the property in the absence of the judge and court reporter. The error is aggravated by the additional fact that the Highway Department engineer while at the view answered questions propounded by members of the jury. [229 So.2d at 829].
Gunn is distinguished from the case sub judice in that it was tried under the eminent domain statutes in effect prior to January 1, 1971. Under the procedures then in effect, appeal from a special court of eminent domain was to the circuit court where the cause was tried de novo. Therefore, as held in Gunn, Section 1800, Mississippi Code Annotated (1942), [Mississippi Code Annotated § 13-5-91 (1972)], was controlling on view of property and that statute required the organized court, consisting of the judge, jury, clerk, sheriff and deputy sheriffs to *816 accompany the jury to the scene. This section was not complied with by the lower court in Gunn, and timely objections were made. Prejudice to the landowner Gunn was clearly shown.
Under the present eminent domain statutes, the appeal from a judgment in an eminent domain court is directly to the Mississippi Supreme Court. There is no de novo trial in circuit court as in Gunn. Therefore, the applicable statute for the jury to view the premises is Section 11-27-19.[1]
The alternate juror who made two remarks at the scene of the property did not participate in the deliberation of the jury. We cannot see how those remarks and the incident involving mixed couples could have prejudiced the jury. No suggestion has been made to what the trial judge could have done had he been present, or what, if anything, the appellants would have requested him to do.
Regardless of the contentions and argument of appellants, their request for a jury view of the property at the conclusion of the evidence was granted, the trial judge charged the jury as to its conduct on the view and no objection was made to that procedure. After return of the verdict, for the first time appellants objected in a motion for new trial. We are of the opinion that appellants' actions constituted a waiver of that point.
There being no reversible errors in the trial below, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., SUGG and WALKER, P.JJ., and BROOM and PRATHER, JJ., concur.
DAN M. LEE, HAWKINS and BOWLING, JJ., dissent.

APPENDIX

DEFENDANTS' INSTRUCTION NO. D-3
The Court instructs the Jury that the measure of damages in an eminent domain proceeding is the difference in the value of the whole tract of property immediately before and immediately after the taking of the condemned property. In arriving at such value, you should award the defendants the amount of damages which has been proven to you by a preponderance of the evidence in this cause.

INSTRUCTION NO. P-5
The Court instructs the Jury that when a part of a larger tract of land is taken for public use, the owner should be awarded the difference between the fair market value of the whole tract immediately before the taking, and the fair market value of that remaining, without considering general benefits or injuries resulting from the use to which the land taken is to be put, that are shared by the general public.
DAN M. LEE, Justice, dissenting:
Being unable to agree with the conclusions reached by the majority, I, therefore, respectfully dissent. Three errors were committed in the trial below, the combined effect of which requires reversal of this case.
The first error involves the exclusion of certain photographs of two houses in Patrick Subdivision which subdivision was used by all three witnesses for the highway commission as comparable property in determining an estimate of compensation. The photographs were properly authenticated but were denied admission solely on the grounds of relevancy. The photographs were relevant and admissible as rebuttal evidence to show the dissimilarities of the property compared so that the jury could decide whether or not to accept or reject the valuation of the property arrived at by *817 the commission's experts. The relevancy of this evidence was compounded by the fact that the Spring Valley Subdivision was subject to certain restrictive covenants while Patrick Subdivision was not.
The age-old rule found in 31 C.J.S. Evidence section 3 (1964) defines "Rebutting evidence" as follows:

Rebutting evidence. Rebutting evidence is that which is given to explain, repel, counteract, or disprove facts given in evidence by the adverse party. It is that evidence which has become relevant or important only as an effect of some evidence introduced by the other side. Rebutting evidence means not merely evidence which contradicts the witnesses on the opposite side, but also evidence in denial of some affirmative fact which the answering party has endeavored to prove. It embraces all testimony which tends to counteract or overcome the legal effect of the evidence for the adverse party. (emphasis ours.)
As a general rule, evidence may be introduced to impeach or contradict a skilled or expert witness or to lessen the weight of his expert opinion even after such witness has been excused by agreement of counsel and he has retired. Contradiction or impeachment may be shown by the use of exhibits, a showing that the expert is interested or biased, that others have, at a prior time, refused to accept the opinion expressed, or that he made inconsistent statements at another time, provided a proper foundation has been laid and the purpose for which the evidence is offered is made clear to the court. 32 C.J.S. Evidence § 571 (1964).
32 C.J.S. Evidence section 571 further provides:
The actual selling price of properties of which a witness testifying as to value claims to know the sale price may be shown, but the selling price of properties, the sale price of which the witness does not claim to know and on which he has not based his testimony as to value, cannot be shown. Where a witness has based his estimate of the value of certain property on the sale price of other property, the reason why such other property was sold at a reduced price may be shown. The amount of revenue stamps on a deed conveying land as to the value of which a witness has testified, or on the value of which a witness has based his testimony with respect to the value of other land, may be shown to test the basis of, and the weight to be given to, his conclusions... .
Textbooks or treatises relied on by an expert witness may be used as a basis for impeaching on cross-examination. Harris v. Pounds, 185 Miss. 688, 187 So. 891 (1939), and 32 C.J.S. Evidence § 574(1) (1964).
In Madden v. Pittman, 242 So.2d 691 (Miss. 1970), which involved several consolidated actions stemming from an automobile collision, complaint was made of the admission of a photograph of one of the vehicles in a storage yard. Finding no error, this Court stated:
The jury was properly instructed on the law. There was no error in admitting into evidence for defendant the color photographs of the Pittman Cadillac in the storage yard. Plaintiffs introduced a photograph of the same car in the same yard, and any divergencies between these photographs as to the position of the left front wheel and tire were explored in detail on examination of the witnesses. (242 So.2d at 692)
The trial judge in the case sub judice concluded that because the photographs depicted houses while the land sought to be condemned was unimproved although the same had been platted into lots for home construction and restrictive covenants filed, the photographs were irrelevant. The photographs were relevant as rebuttal evidence and therefore admissible under the facts and circumstances of this case. This was error that had the effect of preventing the appellants from attacking the basis of appellee's expert witnesses' credibility as to compensation.
The next assignment of error is that the highway commission was granted the following instruction

*818 INSTRUCTION NO. P-2
The Court instructs the Jury that in arriving at your verdict, you shall not consider any elements of inconvenience or other elements of damage which are speculative or remote.
The instruction is highly confusing and should not have been given for the following reasons. In Mississippi State Highway Commission v. Hillman, 189 Miss. 850, 198 So. 565 (1940), this Court stated:
The owner of the land is not restricted to the recovery of damages to the remainder from the mere taking of a part thereof, but is entitled to recover all special damages that may result to the remaining land from the public use to which the part taken is to be put. Sullivan v. Board of Supervisors, 58 Miss. 790, 803. After announcing this rule, it was there said: "It may be necessary to throw up an embankment on appellant's [the landowner's] land to construct the highway, and this may, in seasons of rain or unusual high waters, cause the adjacent land to be submerged, in which event he would be entitled to compensation for that injury."
The compensation awarded the landowner in an eminent domain proceeding is conclusively presumed to include all damages resulting to him from the proper use of the land taken, here specifically from the proper construction of the contemplated highway. Among the cases in which this Court has so held are Yazoo & M.V.R. Co. v. Davis, 73 Miss. 678, 693, 19 So. 487, 32 L.R.A. 262, 55 Am.St.Rep. 562; Columbus & G.R. Co. v. Taylor, 149 Miss. 269, 115 So. 200; and Robertson v. New Orleans & G.N.R. Co., 158 Miss. 24, 35, 129 So. 100. Injuries to the appellees' remaining land from the use to which that taken is to be put affect, of course, its market value. Cf. Mississippi State Highway Comm. v. Prewitt, 186 Miss. 778, 192 So. 11. (189 Miss. at 868-69, 198 So. at 570) (emphasis ours.)
See also Mississippi State Highway Comm'n v. Treas, 197 Miss. 670, 20 So.2d 475 (1945); Rasberry v. Calhoun County, Mississippi, 230 Miss. 858, 94 So.2d 612 (1957); and Mississippi State Highway Comm. v. Stout, 242 Miss. 208, 134 So.2d 467 (1961), overruled on other grounds at 390 So.2d 284.
In Mississippi State Highway Commission v. Crooks, 282 So.2d 232 (Miss. 1973), this Court reiterated the before and after rule and what it encompasses:

The "before and after" rule swallows and absorbs all of the damages of every kind and character, and while it is proper to put on evidence of special items so that the jury can properly determine the "after" value, it is not proper to comment on any particular aspect of the damages in the instructions. Few, if any, attorneys are immune from the occupational hazard of committing errors in drafting of instructions. Particularly is this true when the instructions are prepared under pressure of time or in the crisis of a trial, when cool, analytical chambered reflection is improbable. Apparently this occupational mischief has again occurred here. In the hope that it may be avoided in the future, we point out that there is a lucid discussion in the Stout case of the error in presenting to the jury an instruction such as is under consideration here. In the Stout case the court, speaking through Justice Gillespie, made this succinct synopsis of the pertinent rule of law:
"The before and after taking rule is the ultimate measure of damages. It is not proper to prove as a separate item of damage any item, quality or specific injury; but this does not mean that a witness may not testify concerning any specific quality, item, or specific injury which affects the depreciated market value. `Although every factor affecting a depreciated market value may be put in evidence, the ultimate issue is the extent of their cumulative impact upon such total valuation.' Wheeler v. Mississippi State Highway Commission, 212 Miss. 606, 55 So.2d 225." (242 Miss. at 219-200 [sic], 134 So.2d at 471.)
.....

*819 "`It should repeatedly be emphasized that subjects which are relevant as testimony are not thereby appropriate for instructions. Although every factor affecting a depreciated market value may be put in evidence, the ultimate issue is the extent of their cumulative impact upon such total valuation. When they are made subjects of special comment in instructions, there is not only a violation of Code of 1942, Section 1530, but this results in duplication of damages ... . and the procedure in this sort of case would be simpler and safer if the juries could be instructed that the damage is to be computed upon the basis of the difference between the fair market value of the entire property affected before and after the taking. The several items of damage should be left to the fields of testimony and argument.' Wheeler v. Mississippi State Highway Commission, 212 Miss. 606, 55 So.2d 225, 227." (242 Miss. at 221-222, 134 So.2d at 472.) [(Mississippi State Highway Commission v. Hall) 252 Miss. (863) at 874-876, 174 So.2d (488) at 492-493.]
(282 So.2d at 235-36) (emphasis ours.)
Because the before and after rule swallows and absorbs all the damages, the ultimate measure of damages and instructions to the jury should not comment upon any particular element of damages. Mississippi State Highway Comm'n. v. Blackwell, 350 So.2d 1325 (Miss. 1977).
In Rasberry v. Calhoun County, Mississippi, 230 Miss. 858, 94 So.2d 612 (1957), this Court approved the following instruction:
The jury was also instructed for the County "that in arriving at your verdict you shall not consider any elements of inconvenience or other elements which are speculative and remote." This was approved in State Highway Comm. v. Treas., supra. See also 1 Alexander, Mississippi Jury Instructions (1952), Secs. 2172 and 1264. The instruction correctly stated that elements of inconvenience which should not be considered are those which are speculative and remote. (230 Miss. at 865, 94 So.2d at 615).
The Court relied upon State Highway Commission v. Treas, supra, as authority for approval of the instruction; however, the instruction cannot be found in that opinion nor does it even appear that such an instruction was at issue on appeal. See Mississippi State Highway Comm'n v. Stout, supra, 242 Miss. at 221, 134 So.2d 467.
Subsequently, in Mississippi State Highway Commission v. Stout, 242 Miss. 208, 134 So.2d 467 (1961), this Court upheld the refusal of the same instruction approved in Rasberry. The Court stated:
Appellant assigns as error the lower court's refusal to give the following requested instruction: "The Court instructs the jury for the State Highway Commission that in arriving at your verdict you shall not consider any elements of inconvenience or other elements which are speculative and remote."
This was not error. Appellee was not entitled to recover anything for inconvenience as a separate item of damage, but it would have been error to give the instruction. Where land is taken for a highway and the remaining land is divided by the new highway, the severance damage may be substantial. This is especially true when the highway is a non-access facility and where some of the remaining land is rendered inaccessible to the owner, as in the present case. Severance damage is closely related to inconvenience, for the market value of the remaining land is reduced because of the inconvenience in going from one part to the other or because a part may be inaccessible. The instruction would deny the jury the right to consider an item affecting the after taking value of the remaining lands. The instruction is also objectionable for the reason that it has the effect of telling the jury that inconvenience is speculative and remote when in fact it is neither.

This instruction appears as Form No. 2172, Mississippi Jury Instructions, Alexander, and the footnote indicates that it was taken from Mississippi State Highway *820 Commission v. Treas, 197 Miss. 670, 20 So.2d 475. The instruction no doubt appeared in the record in the Treas case but there was no issue involving the instruction and it was not considered by the Court, and we know of no case where this instruction has been approved. (242 Miss. at 220-21, 134 So.2d at 471-72) (emphasis ours.)
See also Carney v. Mississippi State Highway Commission, 233 Miss. 598, 103 So.2d 413 (1958), holding the following instruction error:

In view of this holding we are of the opinion that the lower court was in error in granting the following instruction to the petitioner: "The Court instructs the jury for the petitioner that the defendant is not entitled to damages resulting solely from inconvenience, if any, entering and leaving his remaining property provided you believe that the public at large suffer the same inconvenience." (233 Miss. at 607, 103 So.2d at 416) (emphasis ours.)
The authorities are clear that a landowner may recover all special damages that may result to his remaining land from the public use to which the part taken is to be put. These special damages should be explored in the fields of testimony and argument; however, the instructions to the jury should not comment on any particular element of damages.
The final error involves the viewing of the condemned property in the absence of the judge and court reporter. The court, after both sides had introduced all their evidence, directed that the jury be taken to the scene of the property for a view of the premises, accompanied by the bailiff. Before the jury left, the court charged it in the following words:
The parties have made a motion to the Court that the Court allow you to be transported out to the scene of this property for the purpose of viewing it. That was made day before yesterday and I promised them that I would let you go take a look at it if it was not raining and they have stalled around long enough so that the rain has passed over, so I guess I will have to let you go. The purpose of this is to allow you to take a look at it and draw any conclusions that you can or you wish to from the observations of the property. There will be no testimony taken out there at the scene, the only conversation that would be had out there would be for the purpose of pointing out to you the boundaries of the property that will be taken. We will let the project engineer go along and point out to you where the right of way acquisition is going to be coming through this property. If you have any questions that you want to ask him about the boundaries of the property, feel free to do so, but that will be the extent of any dialogue between the jury and anyone else at the scene. Ladies and gentlemen of the jury, I am going to let you go back to the jury room and the bailiff will come back and get you and take you out there to the scene under the instructions that I have announced to you. They should be back very shortly, you may go back to the jury room. (emphasis ours.)
The trial judge, attorneys and court reporter remained at the courthouse working on instructions while the jury left to view the premises. Appellant contends this action was error.
This Court has passed upon the question of the necessity of the presence of the court reporter and the judge during a viewing of the property by the jury. Gunn v. Mississippi State Highway Comm'n., 229 So.2d 828 (Miss. 1969). In Gunn, the landowners' attorney moved the court to have the jury view the premises, which motion was granted. Immediately after the jury viewed the property, the landowners' attorney moved for a mistrial on the ground that neither the judge nor the court reporter went with the jury to view the property during which time the highway department engineer answered some questions propounded by some of the jurors. In reversing the case, this Court said:
The trial court committed reversible error in allowing the jury to view the property in the absence of the judge and court *821 reporter. The error is aggravated by the additional fact that the Highway Department engineer while at the view answered questions propounded by members of the jury.
Section 1639 provides that except in cases involving less than $50 no party shall be required without his consent to stand trial in circuit court unless a court reporter is in attendance. This statute contemplates that the entire proceedings, including a view of the premises, must be conducted with the court reporter present. (229 So.2d at 829).
Viewing the property is spelled out in the following sections.
Mississippi Code Annotated section 13-5-91 (1972) provides as follows:
When, in the opinion of the court, on the trial of any cause, civil or criminal, it is proper, in order to reach the ends of justice, for the court and jury to have a view or inspection of the property which is the subject of litigation, or the place at which the offense is charged to have been committed, or the place or places at which any material fact occurred, or of any material object or thing in any way connected with the evidence in the case, the court may, at its discretion, enter an order providing for such view or inspection as is herein below directed. After such order is entered, the whole organized court, consisting of the judge, jury, clerk, sheriff, and the necessary number of deputy sheriffs, shall proceed, in a body, to such place or places, property, object or thing to be so viewed or inspected, which shall be pointed out and explained to the court and jury by the witnesses in the case, who may, at the discretion of the court, be questioned by the court and by the representative of each side at the time and place of such view or inspection, in reference to any material fact brought out by such view or inspection. The court on such occasion shall remain in session from the time it leaves the courtroom till it returns thereto, and while so in session outside the courtroom it shall have full power to compel the attendance of witnesses, to preserve order, to prevent disturbance and to punish for contempt such as it has when sitting in the courtroom. In criminal trials all such views or inspections must be had before the whole court and in the presence of the accused, and the production of all evidence from all witnesses or objects, animate or inanimate, must be in his presence. (emphasis ours.)
Mississippi Code Annotated section 11-27-19 (1972) also provides:
Evidence may be introduced by either party, and the jury may, in the sound discretion of the judge, go to the premises, under the charge of the court as to conduct, conversation, and actions as may be proper in the premises. Evidence of fair market value shall be established as of the date of the filing of the petition. Any judgment finally entered in payment for property to be taken shall provide legal interest on the award of the jury from the date of the filing of the petition until payment is actually made; provided, however, that interest need not be paid on any funds deposited by the petitioner and withdrawn by the defendants prior to judgment. At the conclusion of the trial, either party, by himself or counsel, may argue the case and the court shall instruct the jury as may be requested by counsel for the parties and as a court may consider proper in the premises. All instructions requested, whether given or denied, shall be clearly marked and filed and such shall be a part of the record as in other cases before the court. (emphasis ours.)
Furthermore, this Court has passed on this precise question in Gunn, supra.
The majority seeks to distinguish Gunn on the ground that our eminent domain statutes have been revamped following Gunn. I respectfully suggest that Gunn is on all fours with the facts in this case and cannot be distinguished therefrom, and was reversed and remanded solely due to the failure of the judge and court reporter to accompany the jury when it viewed the property.
*822 The majority's interpretation of section 11-27-19 is indeed strained when said section provides that the jury may, in the sound discretion of the judge, go to the premises, under the charge of the court as to conduct, conversation, and actions as may be proper in the premises. The court cannot be in charge of the conduct, the conversations, and the actions if the judge and the court reporter are several miles away. Furthermore, the majority opinion overlooks section 9-13-31 (1972) which was heavily relied upon for reversal in Gunn. It provides:
In all criminal cases, and (a) in all civil cases, and (b) matters in probate, and (c) in matters of special proceedings, wherein property or demands of as much as fifty dollars may be in issue, no party shall be required without his consent to go to trial in a circuit or chancery court unless the case is attended by a court reporter... . (emphasis ours).
This statute contemplates that the entire proceedings, including a view of the premises, must be conducted with the court reporter present. Gunn, supra.
Therefore, even if the appellant waived the attendance of the judge and attorneys to view the premises which he did not, the judge required that the court reporter remain behind to go over jury instructions. The failure of the court reporter to attend the view of the premises pursuant to Gunn is reversible error.
Perhaps, in our zeal to justify a given result we overlook some basics of our three-separate-branch form of government. We interpret statutes passed by our legislature, not rewrite them nor ignore them. The majority opinion has the effect of telling the trial judges of this state to ignore two plain and unambiguous statutes. Moreover, the trial judge in his charge to the jury prior to its viewing the premises, authorized the project engineer, a witness for appellee, to answer questions propounded by the jury as to the boundaries of the property. This is precisely what Gunn condemned. In my opinion, this alone is sufficient reason to reverse this case. However, when this error is considered in the light of the other two errors previously discussed, a new trial should be granted.
BOWLING and HAWKINS, JJ., join in this dissent.
HAWKINS, Justice, dissenting:
I join in the dissent of Justice Dan Lee, with an additional observation on the fact that the trial judge was not in attendance when the jury viewed the premises.
Of course, error in trial proceedings can be waived by trial counsel. In this case we do not have simple error, however, but rather a conscious abandonment by the trial judge of an affirmative judicial duty in the conduct of trial proceedings.
I would ask, how could the trial judge know whether or not prejudicial error occurred when the jury inspected the premises since he was not there to observe? How could he exercise judicial discretion and rule thereon?
Is it really fair to place the entire burden for this failure on the part of the trial judge on the shoulders of trial counsel who must practice in his court? As an appellate court, insofar as we are able to do so, we have an obligation by our decisions to require judicial proficiency in trial proceedings. Do we best insure the attainment of this objective when we decide that a trial judge is free to do as he pleases so long as there is no objection by trial counsel? Where will we draw the line between error and license, or error and dereliction?
It is my respectful view we should draw the line in this case and reverse.
DAN M. LEE, J., joins this dissent.
NOTES
[1] Trial of the case sub judice consumed three (3) days. Trial judges are reminded and cautioned that, if they and court reporters are not present when a jury views premises, even though specifically charged, something may occur, which, in the absence of the trial judge, might require reversal.